## SNYDER *v.* ROSENBAUM.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 25. Argued November 8, 9, 1909.—Decided December 6, 1909.

In this case the judgment of the Supreme Court of the Territory of Oklahoma, involving contract rights, is affirmed.

The opinion of the Supreme Court of the Territory followed to the effect that the facts stated constituted duress within the meaning of the territorial statute.

Stating only part of a statutory definition of duress in the charge to the jury held not reversible error, it not appearing that the defendant was hurt thereby.

18 Oklahoma, 168, affirmed.

THE facts are stated in the opinion.

*Mr. Gardiner Lathrop,* with whom *Mr. Armwell L. Cooper, Mr. John E. Wilson* and *Mr. John S. Wright* were on the brief, for plaintiff in error.

*Mr. C. J. Wrightsman* and *Mr. J. J. Darlington,* with whom *Mr. Carl Meyer* and *Mr. L. W. Lee* were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error brought by the executors of Robert M. Snyder to reverse a judgment upon a written contract in favor of one Stribling, assigned by him to the defendant in error, Rosenbaum. *Snyder. v. Stribling,* 18 Oklahoma, 168. The contract was dated September 1, 1909, and purported to be a sale by Stribling of 12,700 head of steer cattle, then in pasture near Gray Horse, Oklahoma, of which 12,500 were

to be counted out to the purchaser; with particulars as to age. Also, of from 3,200 to 3,500 acres of corn, 1,400 acres of cane, and about 5,000 acres of hay, all near the same place. Also, of certain horses, mules, wagons, and ranch outfit, employed by Stribling about the said cattle. By a later clause the farms where the fodder was were specified, and it was added that the exact acreage was not guaranteed. The agreed price was $500,000, to be paid, first, by the transfer to Stribling of a ranch in Arizona, with the herd and outfit thereon, at the valuation of $150,000; next, by the assumption of an encumbrance of $240,000 on 10,500 of the cattle sold; 'the balance . . . to be paid . . . or accounted for satisfactorily to said Stribling with . . . days of the signing of this instrument.' It was agreed that 10,500 of the cattle were free from encumbrances except the $240,000 just mentioned, and that if there was any encumbrance of the remaining 2,000 such encumbrance should be deducted from the purchase price. "Said cattle to be counted within fifteen days." Both parties to the contract were experienced men.

Stribling alleged performance of the contract on his part and a breach by Snyder in not conveying his Arizona ranch, and in not accounting for a cash balance of $5,200. The answer set up a document of October 1, 1900, signed by Snyder and Stribling, and addressed to a third party, as a supplemental contract; denied performance of this or the original agreement by Stribling, stating various details of failure, and alleged fraud. The replication averred that to secure an extension of time for the payment of the mortgage on the cattle referred to in the original contract, Stribling and Snyder, on September 5, made an agreement with the holder, by one part of which Snyder agreed to market enough of the cattle to pay the notes that were overdue, and by which he also bound himself to pay the other mortgage notes as they fell due. The replication continued that on October 1, 1900, Stribling had delivered the cattle and other property, and

that Snyder, being in possession of them, told Stribling that unless he signed the document set up in the answer he would not pay for the cattle or pay the mortgage debt or release the cattle; that both parties understood that this threat, if carried out, would lead to an immediate foreclosure and Stribling's ruin, and that in those circumstances, characterized as duress, Stribling signed.

There was a trial and the jury found for the plaintiff. It made in addition a very great number of special findings, establishing, subject to any question of law that may have been reserved, much more than was necessary to support the verdict. It found the following facts among others: In pursuance of the September contract, 12,391 head of cattle were counted out to the purchaser, and the counting of the rest of the 12,500 was stopped by the purchaser's agent, he being satisfied, and there being enough cattle in sight to make up the total. After the count, on or about September 26, 1900, the purchaser took possession and Stribling then ceased to exercise control over the property. This included 12,500 head of cattle, the horses, mules, wagons, harness, pastures, camp outfit and such feed as was there. Stribling asked Snyder for a settlement and Snyder made no objection to the correctness of the count or to the representations as to the acreage of feed or to Stribling's performance otherwise, but nevertheless refused to do his part. He sold the cattle again by a transaction which it is not necessary to trace, and the negotiations concerning which were not known to Stribling at the time of Snyder's threats mentioned in the replication, and of the signing of the document of October 1. The threats alleged are found to have been made and to have induced Stribling to sign, without other consideration. At this time the value of the cattle was going down, and that of the Arizona property was going up, facts that may partly account for Snyder's conduct. It is found that he wanted to avoid the September contract, and to get the cattle by merely discharging the liens. But the parties did not carry out the

provisions of the October document, and upon this finding and the finding as to the pressure under which it was executed it is unnecessary to state its provisions. They were more onerous to Stribling in several respects, requiring a further count, and forfeiting the Arizona property if the full number was not turned over and payment made for any deficiency within five days of the count.

All fraud on Stribling's part is negatived, and the upshot of the whole matter is that he performed his contract in every respect except that there was not so much fodder as was supposed, and for that the jury made an allowance of nine thousand dollars.

The argument for the plaintiffs in error discusses the evidence at great length. But we shall deal only and very briefly with the rulings that seem to us to require notice. It is enough to say at the outset that there was some evidence to support the special findings that we have mentioned. But it is urged that, this being a suit upon the contract, if it was not performed to the letter, the plaintiff cannot recover. The judge instructed the jury that a contract of this kind, for the delivery of a certain number of cattle, is severable, and that if the whole number of cattle or the full number of acres of feed were not delivered, still the plaintiff could recover the contract price less an allowance for the damage occasioned by the failure. This is assigned as error. It is unnecessary to consider whether the construction of the contract was too liberal in favor of the plaintiff or whether it embodied the understanding upon which such dealings take place. The jury found that all the cattle were delivered. As to the deficiency in the acreage of fodder, the contract stated that the precise amount was not guaranteed, and the jury found that Snyder was acting on his own inspection. The deficiency did not go to the root of the contract. Furthermore if, after the parties have had a full trial, and after such specific findings as were made, any amendment were necessary, which we are far from intimating, no doubt it would be allowed. The defendant suffered no possi-

ble surprise. See also Wilson's Stats. Oklahoma, 1903, § 4344.

It is objected further that the other cattle, above the 10,500 mentioned in the contract as mortgaged, and the fodder were subject to liens for about $110,000. But this possibility was contemplated by the contract, the liens were satisfied out of the purchase price, and no harm was done. Finally, it is said, that the delivery was not made within fifteen days. But, by statute, time is not of the essence of a contract, 'unless by its terms expressly so provided.' Wilson, Stats. 1903, § 809. The delay was not the fault of Stribling, but was due to Snyder and his agents. The cattle were accepted without objection on that ground, and if the delay could have been complained of under the circumstances, performance *ad diem* was waived.

The other principal defense and the ground of counterclaim relied upon was the alleged contract of October 1. As the validity of this contract was denied and the execution of it said to have been abandoned, of course the judge was right in refusing instructions that assumed it to be in force. But complaint is made of an instruction to the jury in the language of the statutes as to duress and undue influence. Probably through a mechanical slip, only a part of the statute as to duress was recited, so that fraudulent confinement of the person seemed to be stated as an exhaustive definition. But this did not hurt the defendant, if for no other reason, because there was no pretence of duress in that sense. The judge then went on to quote the definition of one form of undue influence, as 'taking a grossly oppressive and unfair advantage of another's necessities or distress.' Wilson, Stats. 1903, § 746. It is objected that undue influence was not pleaded. But the facts were pleaded and were found by the jury in like form. We should assume that those facts amounted to undue influence within the meaning of the Oklahoma statutes until the Supreme Court of the State says otherwise. But it is said that they do not amount to duress,

and therefore an instruction should have been given, as asked, that there was no evidence of duress. We see no reason for not following the opinion of the territorial court that the facts also constituted duress within the meaning of the statute. See *Silsbee* v. *Webber*, 171 Massachusetts, 378. But it does not seem to matter what they are called if they are found to have existed. Furthermore, we see no ground on which we can go behind the finding that neither side carried out the alleged October contract. There was some evidence to that effect, and we are not concerned with its weight. We do not think it necessary to mention all the points that we have examined. Upon the whole case we are of opinion that no error of law is disclosed that entitles the plaintiffs in error to a new trial.

*Judgment affirmed.*