GRIGG v. BOLTON, United States Marshal, et al.

No. 6491.

Circuit Court of Appeals, Ninth Circuit.

Nov. 2, 1931.

Rehearing Denied Dec. 7, 1931.

A. G. Shone, R. Lewis Brown, and Lowndes Maury, all of Butte, Mont., for appellant.

Wellington D. Rankin, U. S. Atty., and Sam D. Goza, Jr., Asst. U. S. Atty., both of Helena, Mont., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

Appellant, a resident of the city of Butte, Mont., was charged in an indictment, found by the grand jury for the district of Idaho, with having conspired with certain persons

named and others declared to be unknown to the grand jurors to violate provisions of the Harrison Narcotic Act (section 2 [26 USCA § 696]). His removal was sought from the district of Montana. An order for such removal having been made by the United States Commissioner in Montana, he brought his petition for habeas corpus before the United States District Judge in that district, who reviewed the record made before the committing officer. From an order remanding the petitioner to the custody of the marshal, this appeal is taken.

Two contentions are presented here: (1) That the indictment returned in the district of Idaho did not show that a crime was committed within the jurisdiction of the United States court sitting in that district. (2) That in the proceedings before the Commissioner, which were reviewed by the district judge on the writ, probable cause for the finding of the indictment was not established.

That portion of the indictment, pertinent to be considered under the first point, is now quoted: "That T. A. Grigg (whose first and true name is to the Grand Jurors unknown), J. C. Williams (whose first and true name is to the Grand Jurors unknown), and J. L. Lindsay (whose first and true name is to the Grand Jurors unknown), together with sundry and divers other unknown persons to the Grand Jurors unknown, in the City of Butte, State of Montana, on or about the 16th day of October, A. D. 1929, and thereafter continuously from that date to and including the date of this presentment, did wilfully, corruptly, unlawfully, knowingly and feloniously conspire and agree together and with each other, to commit certain offenses against the United States of America and the laws thereof, to-wit, to unlawfully sell, barter, exchange, dispense and possess narcotic drugs, to-wit, morphine sulphate, which then and there consisted of opium and compounds and derivatives of opium, in violation of sections 2 and 8 of the Acts of Congress of December 17, 1914, as amended, commonly known as the Harrison Narcotic Act, the exact amounts of the narcotic hereinbefore described being to the Grand Jurors unknown, and the said unlawful sales and possessions of said narcotics to occur in Butte, State of Montana, in Idaho Falls, Bonneville County, and at Blackfoot, Bingham County, both in the State and District of Idaho, Eastern Division, and within the jurisdiction of this court, and at other places within the territorial limits of the United States of America, which said places are to the Grand Jurors unknown."

It is argued for appellant that the venue is laid in the district of Montana, and hence without the jurisdiction of the court in which the indictment was found. It is true enough that the indictment in terms declares that the defendants conspired in the city of Butte, state of Montana. But that expression alone may not be taken to limit the description of the place of the crime, because of the allegations which immediately follow. Those allegations show that the conspiracy was, after the date named, continuous, and that it included the plan and design to make "unlawful sales and possessions" not only in Montana, but at Idaho Falls and Blackfoot, in the state of Idaho, and within the jurisdiction of the court. The indictment charged eleven overt acts, each of which describes the shipment by the defendant at Butte, Montana, and the receipt in the district of Idaho by Williams of a package containing morphine sulphate. One overt act charged was that the defendant, at a railway express agency, in Butte, requested the cashier of the agency to have two packages which had been shipped by the defendant to Williams and J. L. Lindsey at Blackfoot, Idaho, returned to the defendant at Butte.

By decisions of the Supreme Court of the United States, it is thoroughly settled as the law of conspiracy, that a conspirator may be prosecuted either at the place where the conspiracy is formed or where an overt act pursuant thereto is committed; and that a defendant so charged may be removed to the district where such overt act was committed, even though he had not, prior thereto, been within such district; also that no right secured by the Sixth Amendment to the Constitution is violated thereby. Hyde v. Shine (a review of proceedings on removal), 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90; Hyde and Schneider v. United States (a review after conviction in the same case), 225 U. S. 347, 32 S. Ct. 793, 799, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. In the decision last cited, the court declared that the conspiracy alone did not constitute the offense. "It needs," said the court, "the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy, and all incur guilt by it, or rather complete their guilt by it, consummating a crime by it cognizable then by the judicial tribunals, such tribunals only then acquiring jurisdiction." The court applied section 731, Rev. St. (Judicial Code, § 42 [28 USCA § 103]), which provides that, where an offense against

the United States is begun in one judicial district and completed in another, it may be tried and punished in either district "in the same manner as if it had been actually and wholly committed therein." The conspiracy may be alleged as having been formed at a place unknown, or it may be alleged to have been formed in several places. Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136, where the place that the conspiracy originated was declared to be unknown. In Pope et al. v. United States, 289 F. 312, 314 (C. C. A. 3) the court said: "Admittedly the charging part of each count'is silent as to the place of conspiracy, but the overt acts of each conspiracy are laid within the district in which the indictment was found and, therefore, the offense comes within the jurisdiction of the trial court, under authority of Hyde v. United States, 225 U. S. 347, 367, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, and Brown v. Elliott, 225 U. S. 392, 401, 32 S. Ct. 812, 56 L. Ed. 1136.

See, also, Rudner et al. v. United States, 281 F. 516 (C. C. A. 6); Morris v. United States, 7 F.(2d) 785 (C. C. A. 8.)

■ It must be held that the indictment was sufficient to show jurisdiction in the district court of the district of Idaho.

■■ Was the proof made before the United States Commissioner sufficient to show probable cause to sustain the order of removal? Where removal is sought of a person charged with a crime in another judicial district of the United States, the production of the indictment found by a grand jury in the latter district, together with proof of the identity of the defendant, is sufficient upon which to base the order of removal; that is, the indictment is prima facie evidence of the existence of probable cause for the making of the charge. If the defendant offers to rebut this evidence, the burden then rests with him; and unless positive evidence is produced, which satisfies the Commissioner that the presumption of probable cause established by the indictment is overcome, removal will be ordered. United States ex rel. Tassell et al. v. Mathues, 11 F.(2d) 53 (C. C. A. 3); United States ex rel. Povlin v. Hecht, 48 F.(2d) 90 (C. C. A. 2). Removal order held not invalid although Commissioner refused to hear all of the testimony offered by the defendant. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. Ed. 875.

■ The government went further here than it was required to go. In addition to making proof before the commissioner of the indictment, as found by the grand jury in the district of Idaho, witnesses were called by the United States attorney, whose testimony established that on at least seven different dates, commencing on September 19, 1930, and including October 2, 1930, parcels designated as "medicine" had been shipped by the defendant through a railway express agency to Idaho Falls and Blackfoot, Idaho, directed in all cases, except one, to "J. C. Williams." A number of telegrams were shown to have been received at Butte, which were delivered to defendant, bearing the name of J. C. Williams as the sender, which telegrams had been dispatched from places in Idaho. These telegrams were in cipher form and indicated that the sender was transmitting money, and requesting the defendant to forward something to him, the telegrams not indicating what it was, but the plain inference being that the defendant would understand what was desired. Pre-arrangement is plainly to be inferred. The defendant did not testify before the Commissioner. There were several witnesses called on his behalf, some of whom testified as to his good character. The testimony of some of the others was that the man Williams had, at a prior time, been confined in the county jail at Butte, Mont. Dr. Monahan, a physician practicing in Butte, testified that he had attended him in the jail at Butte, and had prescribed morphine sulphate to be given to him; that he supposed Williams "was taking a lot of drugs," and that he "could have had anything, he could have had a cancer or tuberculosis, and with the amount of drugs he told me he was getting, five grains, you have to infer from that and give it to him to keep him quiet or relieve him from his anguish." The sum of this testimony did not show that the defendant, when he made the various shipments to Williams in Idaho, was acting within his professional right. As before noted, the defendant did not testify, so that nothing was presented tending to show the factors which influenced his action in furnishing morphine to an addict. The holdings of many cases are to the effect that exceptions contained in the Harrison Narcotic Act, by reason of the provisions whereof prohibited drugs may be dispensed, need not be negatived in the indictment; and that where immunity is claimed on the ground that the act of the person alleged to be offending comes within the permissive terms of the statute, the person charged must establish the facts in his defense. Manning v. United States, 275 F. 29 (C. C. A. 8) where a number of the cases are collected. And, while a practicing

physician may prescribe morphine "in the course of his professional practice" (subdivision a, section 696 above cited), the privilege does not include a sale or distribution "intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug." Jin Fuey Moy v. United States, 254 U. S. 189, 41 S. Ct. 98, 100, 65 L. Ed. 214. The court, in that decision, said: "A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it." Webb v. United States, 249 U. S. 96, 39 S. Ct. 217, 63 L. Ed. 497.

The burden which was upon the defendant to show a lack of probable cause for the finding of the indictment was not sustained.

The facts considered, there is nothing in the conclusions stated which is in conflict with the decision of this court in Johnson v. Hotchkiss, 35 F.(2d) 914, 915.

Affirmed.