## HAWKINS v. UNITED STATES.
### No. 8311.

Circuit Court of Appeals, Fifth Circuit.
June 3, 1937.
Rehearing Denied July 1, 1937.

552

Clint W. Hager, A. Guy Smith, and Hal Lindsay, all of Atlanta, Ga., for appellant.

Lawrence S. Camp, U. S. Atty., and J. Ellis Mundy and A. Sidney Camp, Asst. U. S. Attys., all of Atlanta, Ga., for United States.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, a physician, was convicted on eight counts of two indictments, Nos. 14,-277 and 14,554, consolidated for trial, which charged various violations of the Harrison Anti-Narcotic Law (as amended, 26 U.S. C.A. §§ 1040–1054, 1383–1391), through the issuing of prescriptions. He was sentenced to imprisonment of 18 months on each count, the sentences to be served concurrently. Error is assigned to the overruling of general demurrers to the indictments.

Except as to names and dates, the various counts are practically identical. Count 1 of indictment No. 14,227, on which appellant was convicted, is typical. Omitting formal parts and surplusage, it

charged as follows: That David B. Hawkins on the 12th day of March, 1935, then and there being a physician dispenser in opium, morphine, cocaine, and other narcotic drugs, specified in an Act of Congress approved December 17, 1914, and amendments thereto (26 U.S.C.A. §§ 1040–1054, 1383–1391), and who had duly registered with the collector of internal revenue, and paid the special tax required, did knowingly, willfully, and feloniously barter, sell, dispense, exchange, and give away to one A. E. Holley, a quantity of narcotic drugs, to wit, fifteen grains of morphine sulphate, the said bartering, selling, exchanging, dispensing, and giving away of the aforesaid morphine sulphate not being in pursuance of a written order of the said A. E. Holley on a form issued in blank for that purpose by the Commissioner of Internal Revenue, in manner following, to wit: That the said David B. Hawkins did issue and dispense to said A. E. Holley a certain prescription, in the following words and figures, to wit:

"Rx For Mr. A. E. Holley Age 44 Address 395 Hood St., Atlanta, Ga. Exception 1. Article 85. Morphine Sulph. Grs. XV. 30 H. T. 1/2 Grs. each. Sig. Use as directed. 3 days treatment. David B. Hawkins, M. D. Date March 12, 1935. U. S. Reg. No. 6950."

And the said morphine sulphate was dispensed and distributed by the said David B. Hawkins not in the course of his professional practice only, the said David B. Hawkins intending and believing that said prescription would be filled by the retail dealer in opium, morphine, cocaine, and other narcotic drugs under the provisions of the act aforesaid, and which said prescription was filled by DeLamater's Pharmacy (Ira DeLamater), in the possession of the aforesaid A. E. Holley as then and there intended by said David B. Hawkins.

In response to a motion of plaintiff, a bill of particulars was filed, which alleged substantially as to each count: That the said David B. Hawkins, hereinafter called the defendant, at the time and place alleged in said indictment, dispensed and distributed the quantity of morphine sulphate stated in said indictment to the person named in said indictment and in the prescription exemplified therein, not in the course of defendant's professional practice only in that the said morphine sulphate was dispensed and distributed by defendant to the dispensee named in said count and said transaction in bad faith without regard to the cure or alleviation of any malady of which said dispensee was then and there suffering and only for the purpose of satisfying the craving of the said named dispensee for narcotic drugs.

Appellant relies upon the case of Linder v. U. S., 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229. There is no doubt that case ruled that a physician may lawfully prescribe narcotics for an addict purely because of his addiction, provided the amount is not so large as to put it within the power of the addict to sell part of the drug in violation of the Harrison Act, which is to be strictly construed as a revenue measure. In that case the amount prescribed was one tablet of morphine and three tablets of cocaine. The number of grains of the drug in each tablet was not shown, but it may be assumed that a single tablet of morphine was not more than enough for one dose. Because of the small quantity prescribed it was held that the indictment did not charge a crime. We do not consider the Linder Case controlling as applied to the prescriptions specified in the indictments in this case. Each prescription was for at least fifteen grains. Narcotic regulation No. 85,[1] incorporated in the prescription by reference, allows a physician to prescribe narcotics for a bona

---

1 "Article 85.

"Purpose of issue.—A prescription, in order to be effective in legalizing the possession of unstamped narcotic drugs and eliminating the necessity for use of order forms, must be issued for legitimate medical purposes. An order purporting to be a prescription issued to an addict or habitual user of narcotics, not in the course of professional treatment but for the purpose of providing the user with narcotics sufficient to keep him comfortable by maintaining his customary use, is

not a prescription within the meaning and intent of the act; and the person filling and receiving drugs under such an order, as well as the person issuing it, may be regarded as guilty of violation of the law.

"Exceptions.—Exceptions to this rule may be properly recognized (1) in the treatment of incurable disease, such as cancer, advanced tuberculosis, and other diseases well recognized as coming within this class, where the physician directly in charge of a bona fide patient suffering from such disease prescribes for

554

fide patient suffering with an incurable disease or for an aged and infirm addict whose collapse would result from a withdrawal of the drug. Indorsing exception No. 1 on a prescription indicates that the physician has prescribed for a patient suffering with an incurable disease. However, the regulation and the terms of the act do not grant immunity to a physician unless the prescription is issued in good faith, in the course of his professional practice, to a bona fide patient. We consider fifteen grains of morphine was enough to present a question of fact as to the good faith of the doctor to be decided by the jury and the indictments were not demurrable on that point. The indictments in this case were sufficient in form to charge an offense under the statute. It was not error to overrule the demurrers. Glatzmayer v. U. S. (C.C.A.) 84 F.(2d) 192, and authorities therein cited.

Error is assigned to the denial of a motion for a directed verdict of acquittal. The case was submitted to the jury on conflicting evidence. Of the counts upon which appellant was convicted, counts 1, 2, 3, and 4 of indictment 14,277 alleged prescriptions given to one A. E. Holley. Counts 9 and 10 of the same indictment alleged prescriptions given to one Roy Nash and counts 3 and 4 of indictment 14,554 alleged prescriptions given to one Ruth Spann. It was shown that appellant had issued over 500 prescriptions, each for at least fifteen grains of morphine, to addicts, all of which were filled.

Appellant Dr. Hawkins, testified, in substance, that he had known Holley for a long time as a morphine addict, but he had no knowledge of any other doctor's examination of Holley; that Holley suffered from chronic pulmonary tuberculosis and frequently had hemorrhages from the lungs in his presence. As to Holley's tubercular condition, he was confirmed by a diagnosis made by other doctors by examining Holley's sputum and X-ray pictures. He testified, in substance, that he also diagnosed Holley as having endo-carditis and indica-

tions of nephritis and colitis; that he considered tuberculosis and endo-carditis incurable and he believed that if he withdrew the morphine the heart condition and tuberculosis would be exaggerated. There was evidence tending to show that he gave Mrs. Holley a prescription for her husband and she tried to smuggle morphine to him while he was in jail. Appellant testified that he believed Holley was at that time at home flat on his back.

On the other hand, Dr. Nellans, connected with the Veterans' Hospital, testified, in substance, that he examined Holley in 1935; that Holley was admitted to the hospital for stomach trouble and said he was a morphine addict; that Holley received no morphine while in the hospital; that there was a complete physical examination of Holley; that the diagnosis was a spastic colon; that Holley left the hospital because he was not receiving narcotics. Dr. Mestre, pathologist and Roentgenologist at the Veterans' Hospital, made a fluoroscopic examination of Holley, found no pulmonary diseases, no heart, lung, or blood trouble and no ailment requiring morphine. Holley had a bleeding trouble in the large intestine indicating colitis and moderate constipation, not very painful; that advanced cases of morphine addiction invariably have constipation. Dr. McDonald, physician at the Fulton county convict camp, observed Holley, who was there from June to November, 1935. The examination was casual and not thorough. He examined his heart and his mouth, used a stethoscope, found nothing requiring treatment and no reason for narcotics. Holland, chief jailer at Fulton county jail, testified, in substance, that Holley had been an inmate some three or four times, but he had never heard of his being sick while there. McCleskey, guard at Sandy Springs Camp in Fulton county, testified, in substance, that while Holley was an inmate he "laid in" for only a few days with minor common ailments, like a cold, and at all other times he went out and worked the same as other persons. Holley was furnished no nar-

such patient, in the course of his professional practice and strictly for legitimate medical purposes, and in so prescribing indorses upon the prescription that the drug is dispensed in the treatment of an incurable disease; or if he prefers he may indorse upon the prescription 'Exception (1) article 85.' (2): A physician may prescribe for an aged and infirm addict whose collapse would result from the withdrawal of the drug, provided he indorses upon the prescription that the patient is aged and infirm, giving age; or if he prefers, he may indorse upon the prescription 'Exception (2), article 85.' "

cotics. This testimony was corroborated by Abernathy, a watchman at the same camp. Dr. Blalock, Fulton county physician, testified he examined Holley in the county jail, found him a drug addict and emaciated, examined his heart and lungs and found nothing wrong; that Holley had digestive trouble the first two or three days, but it soon cleared up; that he took him off morphine. Dr. Hawk, chief medical officer at the U. S. Penitentiary Annex at Leavenworth, where Holley was from July to December, 1933, testified he treated Holley for influenza, but there was no evidence of tuberculosis or serious heart ailment. Mrs. Holley, the wife of A. E. Holley,' testified, in substance, that her husband never had a hemorrhage of the lung to her knowledge; that he worked as a candy maker; that she got morphine for herself by telling Dr. Hawkins that everything in the world was wrong with her, most of it being imaginary, as she has learned since she had been off the drug.

It is unnecessary to go into details as to Ruth Spann and Roy Nash. Dr. Hawkins' testimony as to them was about the same as in regard to Holley and there was conflicting evidence to the contrary from other doctors. It was clearly for the jury to decide whether Dr. Hawkins acted in good faith and issued the prescriptions in the course of his professional practice to bona fide patients on this conflicting evidence. We cannot say as a matter of law that there was not enough evidence before the jury to support the verdict if the conflict were resolved in favor of the prosecution. The motion for a directed verdict was properly denied.

■ Error is assigned to the admission of medical evidence as to the various methods of treating drug addiction. We will not stop to review this evidence. It was properly admitted. Reeves v. U. S. (C.C.A.) 263 F. 690.

■ In the course of her examination, Mrs. A. E. Holley testified, in substance, that she sometimes went to Dr. Hawkins' office with her husband, but when he was making candy she went alone; that Dr. Hawkins always charged $1 for a prescription; other doctors charged $2. The druggist charged 8 cents a grain for the morphine; that she had purchased narcotics not on a prescription but through illegal sources; that the common and usual price for bootleg morphine was $1 a grain. Objection was made to the admission of her testimony as to the price of bootleg morphine. The basis of the decision in the Linder Case, supra, was that the quantity prescribed was too small to support the presumption that the patient would sell any of it in violation of the law. The prescriptions given to Holley were for not less than fifteen grains. There was other evidence tending to show that the normal dose of morphine was one-fourth of a grain and that if a man were in a dying condition from an incurable disease as much as five grains a day might be administered. The evidence clearly shows that Holley was not in a dying condition. If Holley could purchase fifteen grains of morphine on the prescription for $2.20 and sell it for $15, the presumption is very strong that the quantity put in his hands at one time would be sufficient to induce him to sell at least part of it. Furthermore, Dr. Hawkins also testified as to the price of bootleg morphine. It was not error to admit the evidence.

■ In the course of the general charge, the court instructed the jury on the law as to accomplices and said that one who aids and abets another in committing an offense may be convicted and punished as a principal. Error is assigned to that portion of the charge.

It is apparent that when a physician issues a prescription to be filled and charged for by a druggist, he does not personally sell or dispense the drug. The theory upon which he may be convicted is that he aided and abetted the druggist. Jin Fuey Moy v. U. S., 254 U. S. 189, 41 S.Ct. 98, 65 L.Ed. 214. In the circumstances shown, the charge was proper.

There are other errors assigned, but they are without substance and require no discussion.

■ After the appeal was lodged in this court, appellant presented a motion to return the case to the District Court, without decision on the appeal, and to grant permission to that court to hear and determine an extraordinary motion for a new trial, based on newly discovered evidence, or, in the alternative, to permit the district judge to modify the sentence imposed. This motion was based on the allegations that Dr. J. C. Blalock was the only physician testifying for the government who had ex-

556

amined all three of the addicts, A. E. Holley, Roy Nash, and Ruth Spann; that his testimony was that he found nothing wrong with any of them other than addiction; that on March 7, 1937, about five months after the case was tried in the lower court, Roy Nash died in the Veterans' Hospital in Atlanta, Ga., of chronic pulmonary tuberculosis. From this it is argued that Dr. Hawkins' testimony to the effect that Roy Nash was suffering from an incurable case of tuberculosis was confirmed. Counsel for the United States opposed the motion on the ground that it was made more than 60 days after verdict and could not be entertained under the provisions of rule 2 of the Rules of Practice on Appeal in Criminal Cases, promulgated by the Supreme Court, May 7, 1934 (28 U.S.C.A. following section 723a). The rule relied upon prohibits the District Court from entertaining a motion for new trial based on the ground of newly discovered evidence, unless made within 60 days after final judgment, but the section also authorizes the appellate court to entertain a motion to remand for that purpose, if it be made any time before final judgment. The limitation of 60 days does not apply to motions made in the appellate court in this respect. The motion was made before the case was argued and submitted and was timely.

For the purpose of discussion, we may concede that Dr. Blalock's evidence would be strongly rebutted in respect of Roy Nash by the latter's death. But we must view the case as a whole. The sentence imposed on each count to run concurrently was the same as a general sentence on the whole indictment. It would be sufficient to support the verdict and sentence if there is one good count in the indictment supported by evidence sufficient to support it before the jury. Evans v. U. S., 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830. Eliminating Dr. Blalock's testimony entirely, we entertain no doubt that the conviction of appellant based on the counts charging the giving of prescriptions to A. E. Holley was right. It would merely delay the ultimate serving of appellant's sentence and serve no good purpose whatever to remand the case for the purpose of allowing the District Court to entertain a motion for a new trial on the grounds urged. The motion to remand is denied. The record presents no reversible error.

Affirmed.