**NIGRO v. UNITED STATES.**

No. 11778.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1941.

STONE, Circuit Judge, dissenting in part.

William S. Hogsett, of Kansas City, Mo. (George Reinhardt, of Kansas City, Mo., on the brief), for appellant.

Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and Richard K. Phelps and William Orr Sawyers, Asst. U. S. Attys., all of Kansas City, Mo., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, a physician, was named as a defendant in two indictments. In one of the indictments he with eight others and "divers and numerous" other unknown persons were charged with a conspiracy to violate the Harrison Anti-Narcotic Act, Title 26 U.S.C. § 1044; section 2554, Title 26 U.S.C.A. Int.Rev.Code, 53 Stat. 272. The other indictment, in four counts, charged the appellant and two others with sales of morphine sulphate, a derivative of opium, in violation of the Act. The defendants named in both indictments, with the exception of the appellant, having either pleaded guilty or waived a jury trial, the court on its own motion granted a severance and ordered the two cases consolidated for trial. Verdicts of guilty were returned on the conspiracy charge and upon counts one and two of the indictment charging sales. Upon these verdicts the appellant was sentenced to serve three consecutive terms aggregating four years in a penitentiary and to pay fines totaling $12,000. From the judgments thus entered he appeals.

Some of the errors assigned assail the conviction for conspiracy, some the conviction for sales, and some relate to alleged errors committed on the trial and affecting the verdicts and judgments on both indictments.

We shall first consider the conspiracy case. The substantive crime, which the indictment charges it was the object of the conspiracy to commit, is defined in section 2554, Title 26 U.S.C.A. Int.Rev.Code, formerly section 1044, Title 26 U.S.C., as follows: "It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in Section 2550(a) except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary." The foregoing provision is limited by certain exemptions which provide that nothing contained in this section shall apply to the dispensing or distribution of any of the drugs to a patient by a registered physician in the course of his professional practice only; or to the sale, dispensing or distribution of said drugs by a dealer to a consumer in pursuance of a written prescription issued by a physician registered under the Act.

The conspiracy indictment names as defendants Dominick M. Nigro, M. D. (the appellant), Edward Hipsch, M. D., Philip Saper, M. D., Carroll P. Hungate, M. D., Joseph Getelson, M. D., Erba Frank Conley, Burl Wells, Alvin W. Darling, and Abraham J. Schnaer. It charges that these defendants unlawfully conspired and agreed

together in 1938 and thereafter in violation of section 88 of Title 18, United States Code, 18 U.S.C.A. § 88, to commit offenses against the Harrison Anti-Narcotic Act of the United States, particularly section 1044 of Title 26, United States Code, 26 U.S.C.A. Int.Rev.Code, § 2554, "in the issuing and filing of written orders alleged to be narcotic prescriptions and the sale, barter and exchange of narcotic drugs not in pursuance of written orders on forms issued in blank for that purpose by the Commissioner of Internal Revenue."

The indictment then charges that the object of the conspiracy was that the physician members would issue purported prescriptions for narcotic drugs to addicts not in the course of the professional practice of medicine but for the purpose of enabling the addicts to obtain the drugs to satisfy their craving and not for use as medicine, and that the orders purporting to be prescriptions would be filled by the defendant druggist members of the conspiracy knowing that the prescriptions were fictitious; and that the conspirators would thus sell, barter and exchange the narcotic drugs in violation of the Anti-Narcotic Act. It is then alleged that the defendants did the acts charged.

Of the 23 overt acts alleged only one referring to appellant is pertinent. It is that from January 30, 1939, to May 7, 1939, Dr. D. M. Nigro prepared and delivered to Erba Frank Conley 91 orders purporting to be prescriptions for a total of 1,616 half-grain tablets of morphine sulphate, all of which were delivered to and filled by Darling and Schnaer at their pharmacy as narcotic prescriptions.

It is not contended that the indictment does not charge an unlawful conspiracy to violate the Narcotic Act. The primary contention is that the evidence fails to prove the conspiracy charged and that the court erred, therefore, in overruling the appellant's motion for a directed verdict of acquittal under the conspiracy indictment.

The evidence tends to implicate only two men in the alleged conspiracy, the appellant who is a physician registered under the Act, and Erba Frank Conley, an addict. There is no evidence even remotely connecting the defendants, Edward Hipsch, M. D., Philip Saper, M. D., Carroll P. Hungate, M. D., Joseph Getelson, M. D., nor Burl Wells, named in the indictment as co-conspirators, with the alleged conspiracy. The court did not mention the names of these defendants as conspirators in the instructions. The Court instructed the jury that the burden was on the government to prove beyond a reasonable doubt that the appellant "agreed with Erba Frank Conley, Alvin W. Darling and Abraham J. Schnaer or one or more of them that they * * * would bring about a violation of" the Act in a particular way. Darling and Schnaer are pharmacists, and there is no substantial evidence to show that they were parties to any agreement with the appellant to bring about a violation of the Act. Counsel for the government do not claim in their briefs that there is such evidence. Darling was a witness for the government at the trial, and he testified that he did not know Dr. Nigro and had never talked with him. There is no proof that Dr. Nigro knew either Darling or Schnaer or that he had any connection or arrangement with them with respect to sales of drugs upon prescriptions issued by him.

The only evidence tending to connect the appellant with any of the alleged co-conspirators is the conceded fact that within a period of approximately two years ending on May 7, 1939, he issued to the addict, Erba Frank Conley, more than five hundred prescriptions for a total of 10,762 half-grain tablets of morphine sulphate. Conley is an ex-convict and a narcotic addict. During the interval from January 30, 1939, to May 7, 1939, Conley obtained a prescription from the appellant practically as a matter of daily routine, or a total of 91 in all as alleged in the indictment. The prescriptions were in due form, signed by the appellant, and in varying amounts prescribed 14 to 20 half-grains of morphine sulphate for Frank Conley "for pain for incurable disease T. B." Conley paid the appellant sums ranging from one to two dollars for each prescription, the total amount paid according to appellant's records being $303.25. The charge was not based upon the amount of morphine called for in the prescriptions. In January, 1939, and thereafter, Conley presented the prescriptions to Darling or Schnaer at their pharmacy and purchased the prescribed amount of morphine sulphate. In the two-year period he himself used all the morphine obtained by means of the appellant's prescriptions.

At the trial the appellant denied any conspiracy. He introduced evidence to the effect that the prescriptions were issued in good faith "in the course of his professional practice only"; but there is substantial evi-

dence to the contrary which will be referred to hereafter. There is no evidence, however, that the appellant had the slightest interest in the place chosen by Conley for his purchases or that he ever directed Conley to purchase the drugs at any particular drug store. Testifying for the government Conley stated that in the two-year period he had used the appellant's prescriptions to purchase morphine from several drug stores in Kansas City but that in January, 1939, and thereafter, he purchased it from Darling and Schnaer's pharmacy because they were selling it "a little cheaper."

The appellant contends that under the evidence Conley could not be held guilty of a conspiracy to violate the Narcotic Act, and that if that be true appellant likewise cannot be guilty of the offense since he could not conspire with himself and there is no evidence of any conspiracy with any of the other alleged co-conspirators. He also contends that this lack of evidence establishes a fatal variance between the indictment and the proof.

Government counsel appear to concede that the conspiracy, if any, was one solely between the appellant and Conley. They recognize that Conley's acts in using fictitious prescriptions issued by the appellant to purchase drugs for his own comfort as an addict did not make him guilty of the offense defined in section 2554 of the Act as that section does not purport to punish the purchaser who acquires drugs under the circumstances shown here. Counsel contend, however, that though Conley was incapable of committing the substantive crime he may nevertheless become a party to a conspiracy to accomplish it, and thereby be held guilty of a violation of section 88, Title 18 U.S.C., 18 U.S.C.A. § 88, which provides that "If two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined * * * or imprisoned * * * or both." Counsel cite United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 272, 59 L.Ed. 504, L.R.A.1915D, 281, which holds that the word "commit" as used in section 88, supra, "means no more than bring about"; and they urge that in the present case the evidence establishes a conspiracy between Dr. Nigro and Conley "to bring about illegal sales of morphine by fraudulent use of prescriptions."

The government further contends that the fact that the proof failed to establish the appellant's connection with any of the alleged co-conspirators except Conley is not of any importance in view of Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 630, 79 L.Ed. 1314, which holds that "although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material."

We think that the appellant must be sustained in his contention that Conley, in the circumstances shown here, could not be guilty of a conspiracy to violate section 2554 of the Act. The gist of the offense against the Act charged in the indictment is that the conspirators entered into an agreement to accomplish the illegal sale of morphine sulphate to persons presenting neither a proper order form nor a valid prescription. Obviously, Conley did not conspire to sell drugs in violation of the Act. He did not agree to sell morphine and in fact did not sell any of the drugs obtained by him under the appellant's prescriptions. And his steps in effecting his purchases did not constitute a violation of the Act. Cf. United States v. Farrar, 281 U.S. 624, 634, 50 S.Ct. 425, 74 L.Ed. 1078, 68 A.L.R. 892. The Act is a revenue measure and the tax is imposed not upon a retail purchaser for his own use but upon importers, manufacturers, producers, dealers and practitioners, persons who deal in and dispense the drugs. Its provisions are directed toward the collection of the taxes imposed, and the prevention of evasion by the persons subject to the tax. Nigro v. United States, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600. It is not unlawful to purchase the drugs unless the purchase is made in violation of section 2553 or 2554(g), Title 26 U.S.C.A.Int.Rev.Code. Conley is not accused and the proof does not indicate that he violated either of these provisions of the Act. His agreement with the appellant, if any agreement whatever may be inferred from the evidence, was simply to purchase fictitious prescriptions for the purpose of enabling him to effect his purchases of drugs. This is not the conspiracy alleged in the indictment. The indictment describes a conspiracy among numerous physicians and pharmacists to accomplish in a particular way illegal sales of narcotics to addicts. Conley was named as a conspirator, but the proof fails to

connect him with the alleged agreement to sell.

██ Further, the omission of Congress to make the act of an addict in purchasing narcotics to satisfy his cravings an offense is evidence of an affirmative legislative policy to leave the purchaser unpunished except in the circumstances referred to supra. It would contravene that policy to hold the immunity which the Anti-Narcotic Act itself confers is taken away by the conspiracy statute. Gebardi v. United States, 287 U.S. 112, 123, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. We hold that it does not do so. The proof, therefore, fails to show that Conley was a party to the conspiracy charged. It follows that appellant was not a conspirator, however guilty his own state of mind may have been. He could not conspire with himself. Morrison v. California, 291 U.S. 82, 92, 93, 54 S.Ct. 281, 78 L.Ed. 664; Gebardi v. United States, supra; Turinetti v. United States, 8 Cir., 2 F.2d 15, 17.

The conviction under the conspiracy indictment, therefore, must be reversed.

Turning to the sales case it is contended that the court erred in overruling the motion for a directed verdict for the appellant on counts one and two of the indictment, because (1) the indictment was fatally defective, (2) the appellant was in good faith in issuing the prescriptions, (3) the sales by the druggists were lawful, hence appellant cannot be convicted as an aider or abettor, and (4) there was a fatal variance between the indictment and the proof.

The only distinction between counts one and two of the sales indictment is in respect of the dates of the alleged sales and the amounts of the drugs sold. Count I charged that

"Alvin W. Darling, Abraham J. Schnaer, and Dominick M. Nigro, M. D., whose names other than as herein set forth are to the grand jury unknown did on the 25th day of February, 1939, at 1017½ Grand Avenue, Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, unlawfully, wilfully, knowingly and feloniously sell to one Erba Frank Conley and Martha Irene Conley, 40 half-grain tablets of morphine sulphate, a derivative of opium, the same not then and there being sold in pursuance of a written order of the said Erba Frank Conley and Martha Irene Conley on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States."

In Count II the charge was that the sale was made on the 12th day of April, 1939, and the amount of the sale was 36 half-grain tablets of morphine sulphate.

██ The attack upon the indictment is founded upon the fact that while it alleges that the appellant is a physician it fails to allege that the drugs were dispensed by him not in good faith "in the course of his professional practice only." The contention is that the failure to negative this exception of the statute renders the indictment fatally defective. Unquestionably, it is the usual and we think the better practice to include such an allegation in the indictment; and there are decisions which tend to support the appellant's position that it may not be omitted. See Linder v. United States, 268 U.S. 5, 17, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; United States v. Behrman, 258 U.S. 280, 287, 42 S.Ct. 303, 66 L.Ed. 619; Mitchell v. United States, 6 Cir., 3 F.2d 514; Glatzmayer v. United States, 5 Cir., 84 F. 2d 192; United States v. Hammers, D.C. Fla., 241 F. 542; Freeman v. United States, 5 Cir., 86 F.2d 243. However, the point was not raised in the trial court, and this court is committed to the rule that in a prosecution under this section of the Act it is unnecessary to plead the exceptions to the statute. Manning v. United States, 8 Cir., 275 F. 29; Hurwitz v. United States, 8 Cir., 299 F. 449; Weare v. United States, 8 Cir., 1 F.2d 617, 620; Brown v. United States, 5 Cir., 2 F.2d 589; Bethea v. United States, 7 Cir., 1 F.2d 290; Grigg v. Bolton, 9 Cir., 53 F.2d 158; Nicoli v. Briggs, 10 Cir., 83 F.2d 375; and see United States v. Doremus, 249 U.S. 86, 90, 39 S.Ct. 214, 63 L.Ed. 493.

██ The appellant contends that the prescriptions were issued in good faith and that there is no substantial evidence to the contrary. This contention is without substance. In addition to the prescriptions issued to Erba Frank Conley, the appellant in the two-year period ending on May 7, 1939, issued 485 prescriptions to Martha Irene Conley, the wife of Conley, for an aggregate total of 9,053 half-grain tablets of morphine sulphate. Mrs. Conley is also an addict. Both Conley and his wife testified that the appellant did not make a physical examination at any time. Mrs.

Conley stated that "at first he [appellant] told me that he could not write me any prescription just as an addict, that the only way he could write it would be if I had some disease, some incurable disease like tuberculosis or cancer, so I told him 'Well, make it cancer'." Nearly all of the prescriptions issued in the name of Mrs. Conley indicated that they were "for pain for incurable disease (cancer)." Conley testified that he frequently purchased prescriptions for both his wife and himself from one of the appellant's office girls who filled them out from a pad previously signed by the appellant. From May, 1937, to March, 1939, the appellant issued more than 800 prescriptions to the Conleys nearly all of which called for 20 half-grains of the drug. Conley testified that during the last two or three months that he purchased the prescriptions the appellant stated that the amount would have to be reduced as the Narcotic Bureau "was raising the devil about it." While the appellant introduced substantial evidence tending to contradict the testimony of the Conleys the question of good faith clearly was one for the jury.

■■ The most serious contention made by the appellant is that his conviction necessarily must rest upon the theory that he aided and abetted the druggists, Darling and Schnaer, in making illegal sales of morphine sulphate to the Conleys, there being no proof that he himself sold the drugs to them in the ordinary way. The argument is that since there is no proof that Darling or Schnaer had any knowledge of the illegal character of his prescriptions they committed no crime in making the sales to the Conleys and there was no crime, therefore, for the appellant to aid and abet; that is, that he may not be convicted for aiding and abetting another in the commission of a crime unless the other has actually committed the crime. Havener v. United States, 8 Cir., 15 F.2d 503, 505; Yenkichi Ito v. United States, 9 Cir., 64 F.2d 73, 75.

The court instructed the jury upon the theory that appellant could be found guilty only as an aider and abettor of the druggists who made the sales. Since there was no proof that at the time the sales alleged in the indictment were made the druggists had guilty knowledge of the fictitious character of the prescriptions the instruction was erroneous. The instruction was without prejudice to the appellant, however, be-

cause there was ample evidence to support a verdict on the theory on which the government tried the case, namely, that appellant participated in the prohibited sale by issuing the fictitious prescriptions. The judgment will not be reversed because the court by an erroneous instruction placed a heavier burden upon the government than he should have done when the instruction is not challenged by the appellant and is without prejudice to him. City of San Juan v. St. John's Gas Co., 195 U.S. 510, 520, 25 S.Ct. 108, 49 L.Ed. 299, 1 Ann.Cas. 796; Snyder v. Rosenbaum, 215 U.S. 261, 30 S.Ct. 73, 54 L.Ed. 186. In this instance no exception was taken to the instruction in the trial court, and it is not criticised here as an abstract rule of law. Lockhart v. United States, 6 Cir., 264 F. 14.

■ The indictment charges an outright sale by the appellant in violation of section 2554, supra, while the evidence tends to show that as a physician registered under the Act he issued fictitious prescriptions to an addict who purchased the narcotics from an innocent druggist. It was settled by the decision of the Supreme Court in the case of Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 100, 65 L.Ed. 214, that "selling", within the meaning of the statute, is not "confined to a parting with one's own property"; that a physician may participate in a sale in violation of the statute by unlawfully issuing a prescription to another person who effects the purchase. The evidence in that case showed collusion between the physician and the druggist who filled the prescription; but the court said (254 U.S. at page 194, 41 S.Ct. at page 100):

"Manifestly the phrases 'to a patient' and 'in the course of his professional practice only' are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug. A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it. Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497."

There are decisions tending to support the contention of appellant that unless

direct sales are shown, a physician may be shown to "sell" in a criminal sense only by proof that he participated as an aider and abettor or as a conspirator, in an illegal sale by a druggist. Manning v. Biddle, 8 Cir., 14 F.2d 518; Jackson v. United States, 8 Cir., 297 F. 20; Doremus v. United States, 5 Cir., 262 F. 849, 13 A.L.R. 853; Di Preta v. United States, 2 Cir., 270 F. 73; Foreman v. United States, 4 Cir., 255 F. 621.

If the physician's guilt is made to depend upon collusion between him and the druggist or upon the druggist's knowledge of the illegal character of the prescription, the crime of the physician depends entirely upon the whim of the addict. If the addict has the prescription filled by an innocent druggist, the physician's act although unlawful is not punishable under the Act, whereas if the addict purchases from a druggist with guilty knowledge of the illegal character of the prescription, the physician is guilty of participation in the sale. In either case the unlawful quality of the physician's act remains the same; and in either case the evasion of the tax is equally probable. Nigro v. United States, 276 U.S. 332, 346, 352, 48 S.Ct. 388, 72 L.Ed. 600; United States v. Doremus, 249 U.S. 86, 94, 39 S.Ct. 214, 63 L.Ed. 493; Ratigan v. United States, 9 Cir., 88 F.2d 919, 921.

This court is unequivocally committed to the view that a registered physician who issues a prescription for morphine sulphate to an addict not in the course of his professional practice, and the addict upon such prescription purchases morphine even from an innocent druggist, the physician participates in the illegal sale and is guilty of "selling" within the meaning of the statute. See Manning v. United States, 8 Cir., 31 F.2d 911. This conclusion is supported by numerous authorities. See Nelms v. United States, 9 Cir., 22 F.2d 79; Dysart v. United States, 5 Cir., 270 F. 77; United States v. Keidanz, D.C.N.Y., 270 F. 585; United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Du Vall v. United States, 9 Cir., 82 F.2d 382; Boehm v. United States, 8 Cir., 21 F.2d 283; Boyd v. United States, 6 Cir., 4 F.2d 1014, affirmed, 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857; Simmons v. United States, 6 Cir., 300 F. 321; Hawkins v. United States, 5 Cir., 90 F.2d 551; Freeman v. United States, 5 Cir., 86 F.2d 243; Bush v. United States, 5 Cir., 16 F.2d 709.

The contention that there was a fatal variance between the indictment and the proof in that appellant was charged with a sale and the proof showed a sale by means of a fictitious prescription is without merit. The indictment was sufficient. Had appellant desired more information he should have moved for a bill of particulars.

It is claimed also that there was a variance as to the sales. Count I of the indictment, for example, charges one sale of 40 half-grain tablets of morphine on February 25, 1939, to Frank and Martha Conley. The proof showed one sale to Conley representing himself as Curtis upon two prescriptions, one in the name of Frank Conley and the other in the name of Martha Conley. The variance is trivial and without prejudice.

The conviction upon the sales indictment must be reversed, however, for prejudicial error in the admission of evidence. Upon the trial of the case the government introduced the testimony of a narcotic agent named Monroy. Over timely objections of counsel for appellant Monroy testified that from April 14, 1938, to October 19, 1938, he made an investigation of the appellant, the nature of which was "watching the activities of the office as to addicts entering and leaving the place." He stated that he usually went to the lobby of the office building to "observe the addicts that congregate there, usually from probably a quarter to eight (A.M.) until about eight-thirty. About eight-thirty they would all make a rush for the elevator and go upstairs, and then come down with their prescriptions and go to the drugstores with them." He testified that these individuals went into Dr. Nigro's office. Upon objection by counsel for the appellant the court stated that the witness would not be permitted to "say somebody else is an addict; that is a conclusion. You can describe the people that went to Dr. Nigro's office, their physical appearance and all that." Thereupon, over the objection of appellant's counsel, the witness stated that "they were very badly emaciated, very nervous, very fidgety, standing on one foot for a while, and then yanking the nerve of their neck in here (indicating)—there is a very peculiar yank that is in there when they talk."

The admission of Monroy's testimony was prejudicial error. The only sharply contested issue in the trial was the question

of appellant's good faith in prescribing morphine for the Conleys. Aside from Monroy's testimony the government's evidence on this issue largely depended upon the testimony of the Conleys. They were admittedly of a very degraded character, and their testimony was subject to close scrutiny. Opposed to it is testimony that the appellant is one of the most successful physicians in Kansas City with a large yearly income derived from private practice and industrial insurance companies. A number of prominent physicians testified that the appellant's reputation in Kansas City medical circles was very good. There is testimony that the Conleys were suffering from various diseases, among them cancer and tuberculosis, and that the appellant treated them for these diseases. Without outlining all the testimony in full it is enough to say that with the scales thus balanced, Monroy's testimony unquestionably was highly prejudicial. The district court so regarded it. In referring to it in his memorandum opinion the court said, "Certainly that was testimony which damaged the defendant." The court was of the opinion that it was competent on the issue of good faith. We do not think so. Evidence that appellant had issued illegal prescriptions to addicts other than the Conleys would have been admissible. Strader v. United States, 10 Cir., 72 F.2d 589, 591. But evidence that his office was a Mecca for "badly emaciated, very nervous, very fidgety" patients was clearly irrelevant and prejudicial. Towbin v. United States, 10 Cir., 93 F.2d 861, 868, 869; Paris v. United States, 8 Cir., 260 F. 529, 531. As said by this court in the last cited case, "It is essential to the admissibility of evidence of another distinct offense that the proof of the latter offense be plain, clear, and conclusive. Evidence of a vague and uncertain character regarding such an alleged offense is never admissible." (citing authorities.) Such evidence tends to lead juries to rest their verdicts upon false issues. It necessitates the trial of matters collateral to the main issue and is extremely prejudicial. Fish v. United States, 1 Cir., 215 F. 544, 549, L.R.A. 1915A, 809.

Some of the assignments of error relate to matters which are not likely to arise on a new trial. We shall not extend the opinion, therefore, by discussing them. The jury, however, should not be told that defendants the Conleys and Darling have pleaded guilty, unless they appear as witnesses and testify to their guilt. See Walker v. United States, 8 Cir., 93 F.2d 383, 395.

It is insisted that the court erred in permitting counsel for the government to make improper argument to the jury. No exception was taken at the time of the trial. We have nevertheless examined the arguments and find no prejudicial error nor improper arguments.

It is finally urged that the court erred in refusing to include in the charge to the jury appellant's request No. 8. We think the request was fairly covered by the instructions given. There was no error in failing to include the requested instruction in the language requested. Bowdry v. United States, 8 Cir., 26 F.2d 791, 793.

For the errors pointed out above the judgments are reversed and the case remanded with instructions to grant a new trial.

STONE, Circuit Judge.

I concur in the excellent opinion of Judge THOMAS except that I think a conspiracy to violate this Act can exist between an addict and a physician who furnishes the addict with a fraudulent prescription. Also, I think the evidence here is sufficient to establish such conspiracy in this case.