## UNITED STATES v. DUNNE.
### No. 15943.

United States District Court,
E. D. Pennsylvania.
July 13, 1951.

On January 12, 1949 Nolan received packages containing books of twelve tickets each for the Irish Sweepstake on the Grand National 1949, the counterfoils or stubs from these tickets to be received in Ireland by February 14, 1949. These packages were to be delivered to the various sub-agents in Club 9. Included in this shipment was a package of 400 books of tickets for No. 1408; Nolan wrote the name "Dunn" on this package.

On January 13, 1949 federal and local authorities legally entered Nolan's residence and confiscated all lottery material including the package marked for delivery to defendant. Thereafter, Nolan did not distribute books of tickets for the Irish Sweepstakes.

Bernard Frank, Asst. U. S. Atty., Allentown, Pa., with him Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for plaintiff.

Bernard I. Shovlin, of Philadelphia, Pa., for defendant.

BARD, District Judge.

Jeremiah Dunne was tried before a jury and found guilty of knowingly sending by mail a letter concerning a lottery in violation of 18 U.S.C.A. § 1302[1]. He has moved for acquittal and arrest of judgment, or in the alternative for a new trial.

The Irish Hospitals' Sweepstake is a lottery that contemplates the use of the mails. The headquarters are in Dublin, Ireland. The principal method whereby tickets or chances for the sweepstakes are sold in the United States is through organizations called "clubs". An individual distributor is in charge of each club; the club's members are numbered sub-agents who sell the tickets.

One Frank Nolan was distributor for Club 9, which included Philadelphia, Pennsylvania. Defendant was sub-agent No. 1408 in Club 9. During 1947 and 1948 defendant sold tickets for the Irish Sweepstakes; these tickets were supplied by Nolan.

On May 4, 1949 defendant was notified that the Frankford post office was holding a letter addressed to him that was supposed to contain matter the importation of which was prohibited. Defendant went to this post office, received the letter, and read it. When the postmaster demanded the letter, defendant refused to give it to him and tore the letter into pieces, putting the pieces in his pocket. Finally, defendant threw the pieces on the counter and left.

The envelope was addressed to defendant under the name of "Mr. Jerry Dunne" and had been postmarked in Ireland. The letter was typewritten, and when reconstructed read as follows:
"Ref: 9–1/408/KN

> 59, Rathdown Road,
> N.C. Rd.,
> DUBLIN.
> 22nd April, 1949.

Dear Sir,

Your request for extra supplies has been received and we are endeavoring to fulfil, but would inform you that you have received more than your full quota based on returns.

Assuring ...... our best attention at all times.

> Yours faithfully,
> T. A. Grogan."

1. Act of June 25, 1948, c. 645, 62 Stat. 762.

The name "T. A. Grogan" was not signed but was typewritten although the name was initialed.

It was brought out on cross-examination of the government's witnesses that defendant had relatives in Ireland.

The gravamen of defendant's offense is that he knowingly sent by mail a letter concerning a lottery. 18 U.S.C.A. § 1302. The government sought to prove this charge with evidence that defendant knowingly caused the above quoted letter to be mailed to him.

■ Section 2(b) of Title 18 U.S.C.A.[2] defines a principal as anyone who "causes an act to be done, which if directly performed by him would be an offense against the United States," and makes him punishable as such. Therefore, defendant was properly indicted if he knowingly caused such a letter to be mailed to him. Cf. Nigro v. United States, 8 Cir., 117 F.2d 624, 630–631; Cochran et al. v. United States, 8 Cir., 41 F.2d 193, 197–198.

The government's theory of the case is that defendant knew the Irish Sweepstakes are lotteries that contemplate the use of the mails, that defendant somehow requested somebody in Ireland to send him books of tickets to sell, and that the above quoted letter was written in reply to defendant's request.

The vital question presented by defendant's motion for acquittal and arrest of judgment is the authenticity of this letter.

No evidence was introduced to show who or what resided at 59, Rathdown Road. This was not the address where counterfoils were to be sent. It might have been the address of a depot, or it might have been a store, a factory, a warehouse, a private home or even an empty lot.

No evidence was produced to prove that defendant requested additional books of tickets. In fact, no evidence was produced to show that defendant continued to sell tickets for the Irish Sweepstakes after January 1949 when Nolan's residence was raided and the books confiscated.

Furthermore, no evidence was presented to identify T. A. Grogan. Is this person connected with the Irish Sweepstakes in any way, or is this a relative or friend of defendant, or is it a fictitious name? Nobody knows.

The best the government's witnesses could do was attempt to interpret the reference, to explain certain terminology in the letter, and to show that individuals might receive books of tickets directly from Ireland.

These witnesses said that 9 could mean Club 9 and that 1/408 could mean subagent No. 1408. They testified that books of tickets for the Irish Sweepstakes are referred to by various terms including the word "supplies", that sub-agents were limited to fixed quotas of books based on past performance, and that returns were counterfoils and money sent in to Ireland. They further stated that persons listed as sellers could get books directly from the sweepstakes home office, but they also said that the principal method of distribution to sub-agents was through a distributor.

From all this the government concluded that the sender must have been connected with the Irish Sweepstakes since he knew defendant's club and sub-agent numbers, and that the letter was in answer to a prior request by defendant for additional books of tickets.

To say that the letter in question shows by its contents that it is a reply letter, and then to use this fact to authenticate the letter is bootstrap reasoning when there is no evidence of an original communication.

The government's interpretation of the reference numbers· and of the terms used in the body of the letter may be correct, but there is no extrinsic evidence to support that interpretation, and these numbers and terms are certainly not limited to that interpretation only. Nor is there any affirmative evidence that defendant was familiar with the contents of this letter. Therefore, the contents themselves do not reveal a knowledge peculiarly referable only to the sale of lottery tickets by defendant.

2. Act of June 25, 1948, c. 645, 62 Stat. 684.

The fact that defendant attempted to destroy the letter in question may properly be considered by the jury when determining defendant's guilt or innocence. But that fact will not authenticate the letter when the government fails to connect the return address with the Irish Sweepstakes, fails to identify the sender of the letter, fails to prove it really was a reply letter, or fails to show that contents reveal a knowledge peculiarly referable to defendant.

Without such authentication the letter is meaningless and not relevant, and there was insufficient evidence to submit the case to the jury. Accordingly, I should have granted defendant's motion for judgment of acquittal.

Defendant's motion for a new trial is hereby denied. Defendant's motion for acquittal and arrest of judgment is hereby granted.