# CITY OF SAN JUAN *v.* ST. JOHN'S GAS COMPANY, LIMITED.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF PORTO RICO.

No. 41. Argued November 3, 1904.—Decided December 12, 1904.

Under both the common and the civil law, in the absence of a stipulation to the contrary, the character of the money current at the time fixed for performance of, and not at the time of making, a contract is the medium in which payment may be made.

Where there has been a *bona fide* dispute as to the medium of payment under a contract and an agreement is finally reached that a payment in one medium shall extinguish a larger amount in another medium, the payment is a complete accord and satisfaction and the rule that a less

sum although accepted in full satisfaction of a larger liquidated amount is not binding as to the excess for want of consideration is inapplicable.

THE gas company, defendant in error, an English corporation, sued the city of San Juan, the plaintiff in error, to recover $14,600.60, alleged to be due for services in lighting 485 street lamps from November, 1899, to September 16, 1900. Annexed to the petition was an account showing the items from which the balance resulted. The city generally denied, and pleaded that under the contract for lighting it had at various times imposed fines upon the company for neglect of its contract duty, which fines were a set-off, and extinguished the sum sued for. A statement of account was also filed by the city, showing the alleged set-off. Both the accounts credited the gas company for lighting with $15,125.70. In the account of the gas company that company credited itself with several small items for labor and materials supplied to and materials appropriated by the city, aggregating $246.42, and for interest calculated at twelve per cent up to September 16, 1901, the items in question and the interest amounting to $2,215.96, making the total credited to the company $17,588.08. These sums were not in the account of the city. Whilst the credit items in both accounts, therefore, agreed except as above stated, there was this further difference: The account of the gas company stated that the sums to its credit were payable in gold or United States money; whilst the account of the city stated such items as payable in Porto Rican currency, declared to be worth forty per cent less than United States gold or currency. The gas company debited itself with various payments made to it by the city on account of the services rendered and for the sum of a certain ground rent, all amounting to $2,987.42, leaving in its favor the balance sued for. The city's account, whilst debiting the company with payments in United States gold to the amount stated in the gas company's account, treated the debt as being due in Porto Rican currency, and figured the payments in gold as extinguishing a larger amount by forty per cent than the face value

of the gold. In addition the gas company was debited with certain fines imposed and other charges, and was moreover debited in Porto Rican money with two sums aggregating $8,836.88, amounting, if paid in gold, to $5,332.13. These two debits, it was recited in the account, were the sums in Porto Rican money or its equivalent in gold, which the city was bound to pay to the firm of Mullenhoff & Korber, to which firm the gas company, with the consent of the city, had transferred a portion of its claims against the city in Porto Rican money, to be paid in its equivalent in gold. By the result of the debits against the gas company the items credited to it were extinguished and the account balanced. Thus the substantial difference between the two accounts arose from the fact that one stated the debt to be payable in gold or United States money, the other treated it as payable in Porto Rican currency.

Subsequently the city pleaded that it had paid to Mullenhoff & Korber the sum of $5,196.80 in United States gold, and was entitled to due credit therefor, and it was thereafter agreed between counsel that this amount had been paid under the transfer in question. As will hereafter appear, $4,337.32 of the sum was paid as the equivalent of $7,228.20 in Porto Rican currency, the amount due for street lighting up to June 1, 1900, if estimated in Porto Rican money, while the balance of $859.48 was paid as satisfying the charge made for street lighting in the month of June, 1900, also consisting of a larger sum in Porto Rican money.

At the trial the undisputed proof showed that in 1875 the city made a contract, to last for twenty-five years, with one Steinacher for the lighting of the city, which contract, about 1878, was assigned to the gas company; that shortly after there was a difference between the parties as to whether the sums due under the contract were payable in Porto Rican money or in current foreign money. As a result, all the payments up to and exclusive of the items embraced in the suit were received by the gas company, under protest, in Porto Rican currency. So far as any payments made on account of the

items embraced in the suit and stated in both accounts, it was undisputedly shown that they were made in United States gold.   There was proof tending to show that the city in making them insisted that the gold should extinguish its equivalent amount in Porto Rican currency, whilst the company claimed that the payments should only extinguish a sum equal to the face value of the United States gold.

Concerning the transfer to the firm of Mullenhoff & Korber, and the payment made by the city to that firm, it was indisputably shown as follows: That the gas company, being in want of funds, had agreed to transfer to the firm a given portion of its claim, and applied to the city to recognize the assignment and to pay to the transferees the sum assigned, and that action was taken on this request by the city and was accepted in writing by Scott, representing the gas company, as follows:

"I, Ramon Negron Flores, secretary of the city council of the city of San Juan, hereby certify, that at the meeting held by the city council of San Juan, on the eighteenth day of this month, the following resolution was passed:

"20.—The president of the city council declared that Mr. Scott, the contractor of the public lighting for the city, and Mr. Korber, a member of the firm of Mullenhoff and Korber of this city had called on his office and stated that the amount of seven thousand two hundred and twenty-eight pesos and eighty-seven cents, Porto Rican currency, total amount of the credit due to Mr. Scott, on account of his services as contractor from November of the year one thousand eight hundred ninety-nine, to last May, being deducted the amounts already collected by the said contractor, should be delivered to the above said firm, to the credit of which Mr. Scott wishes this amount to be passed.

"The city council agreed with the declarations of the president, and passed the resolution considering the said balance of seven thousand two hundred and twenty-eight pesos with eighty cents equivalent of four thousand three hundred and

thirty-seven dollars and thirty-two cents in favor of the firm of Mullenhoff & Korber, being therefore the municipal corporation relieved from any compromise with Mr Scott concerning the said amount, without any prejudice to the resolutions to be passed some time in the future, about the claims previously filed by the said contractor.

"And to begin the respective proceedings, I write and sign this declaration in San Juan of Puerto Rico this twenty-second day of June of the year one thousand nine hundred.

(Signed) R. NEGRON.

"On twenty-second June, being present Mr. Scott and Mr. Korber, the latter acting as representative of the firm, of which he is a partner, I notified them the above resolution, and they affixed their signature as a proof of their acquiescence to the same, declaring at the same time, that the amount of the account of the month of June of this year, should be recognized as due to the same firm, to which the said amount must be paid. I certify it.

(Signed) R. NEGRON.
(Signed) MULLENHOFF & KORBER.
(Signed.) L. A. SCOTT.

SÁN JUAN, June 19th, 1900.
Let it be done. The Mayor, EGOZCUE."

There was testimony, admitted without objection, tending to show that at the time the city accepted this transfer it was understood that the reservation made in the written agreement related only to fines which it was contended the city had unjustly imposed on the company. The court rejected the offer of the city to prove that the parties, by their conduct prior to the period covered by the items sued for, had interpreted the contract as meaning that the payments were to be made in Porto Rican money and not otherwise. The court also refused to instruct, at the request of the city, that the contract was payable in Porto Rican money, and charged that

it provided for payment in foreign money, exclusive of Spanish gold, which was current in the island at the time the contract was made. The court further instructed that the payments made by the city to Mullenhoff & Korber in gold should be debited to the city at the face value of those payments, unless the jury found that the minds of the parties had met on a new contract to substitute Porto Rican currency for the foreign current money stipulated by the contract. The court, moreover, refused the request of the city to charge that, if at the time of the transfer to Mullenhoff & Korber, there was a compromise entered into between the parties by which the payment to the firm of a given amount in United States currency should extinguish a larger amount of the debt due the company in Porto Rican money, that the parties were bound thereby, as to such payment. Besides, the jury were instructed that, as there was no proof concerning the fines imposed by the city upon the company as stated in the account of the city, such items must be disregarded, and that interest, as calculated in the account of the city not being exigible under the local law, must also be disregarded.

There was a verdict and judgment thereon against the city for $8,761.35, and this writ of error was prosecuted.

Submitted by *Mr. N. B. K. Pettingill* for plaintiff in error.

*Mr. Frederic D. McKenney,* with whom *Mr. Francis H. Dexter* and *Mr. John Spalding Flannery* were on the brief, for defendant in error:

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

In order to come to the principal controversy covered by the assignments of error we dispose of certain contentions which we deem of minor importance. We think the court was right in instructing the jury that it must disregard the

items as to fines charged by the city against the gas company, because no proof was offered on the subject. Whilst it is true, as asserted in the argument, that some reference was made to such fines in the testimony of one or more of the witnesses, such reference in no sense tended to establish that the fines had been legally imposed. As to the assignment of error relating to the refusal of the court to allow testimony for the purpose of showing that even if, under the contract, payment in foreign current money was required, the contract was tacitly modified, we deem it unnecessary to express an opinion for the following reasons: The record shows that subsequent to the ruling complained of, without objection, testimony was admitted establishing that although all the payments made up to the first of the items embraced in the claim in suit, were made by the city to the gas company in Porto Rican money, nevertheless that such payments were only received by the gas company under protest, asserting its right to be paid in foreign current money. However conclusive on the gas company may have been the receipt by it of payment in a different medium from that which it asserted the contract required, the fact of the protest operated to prevent the inference that the medium actually received was admitted to be the one in which future payments should be made.

With the questions just referred to out of the way, it is apparent from the statement which we have made of the case that the record requires us to decide only two questions, first, In what money were the sums due under the contract payable? and, second, The effect of the agreement concerning payment made by the city to Mullenhoff & Korber.

1st. *In what currency were the sums due under the contract payable?*

The contract, of which only a translation is in the record, was passed before a notary, and is voluminous, containing in minute detail a recital of all the occurrences which took place from the date of the first steps taken to make a contract and its consummation.

Excluding irrelevant details, it appears as follows:

Some time in 1874 the city advertised for bids for a contract for lighting. Proposals were received from a Mr. Steinacher and Mr. Olney. Steinacher, whilst proposing to bind himself to light lamps for three dollars monthly for each lamp, suggested that the city modify its request for proposals in several particulars, one of which was that there should be included in the contract the purchase by the contractor of gas works then owned by the city. This suggestion was accepted, and preparatory to making a call for bids, after obtaining the authority of the provincial deputation of Porto Rico, the city directed that the gas works be appraised by certain city officials. This appraisement was made as follows:

| Recapitulation: | Pesetas. |
|---|---|
| Value of the buildings........................ | 19,176.25 |
| Fixed and loose materials in the gas works........ | 48,908.85 |
| Fixed materials in the city..................... | 10,624.00 |
| Total amount............................. | 78,709.10 |

The present appraisement amounting to 78,709.10 pesetas, or $31,741.82 of the currency in commerce.

PORTO RICO, 26*th of May*, 1875.

The municipal architect.

(Signed)                          DOMINGO SESMERO.

The city thereupon called for new proposals. Among the many conditions exacted were, first, that the bidder should agree to light street lamps at $3 monthly for each lamp, and that payment for the same "will be made in the circulating foreign money in commerce for the value that it is received without any premium that will equalize it to the Spanish official current money;" that he should buy the gas works, appraised, as we have above stated, at $78,709.10, Porto Rico money, at its equivalent in foreign currency, $31,741.82; that the bidder should furnish a guarantee of $6,000 in cash or a bond for

$9,000, to be secured by first mortgage on a house in the city, satisfactory to the municipality. Many details were provided in the conditions; as to the manner in which the contractor should perform his duties; as to fines to be imposed by the city for neglect in the quality and character of the light furnished, and for various other delinquencies, and it was also provided "the penalties for faults in the service and supply of gas to the public will be imposed by the alcalde without appeal."

Steinacher was the only bidder in answer to this call for proposals. He offered "to take charge of the city service for the amount of $3 currency for each lamp," and to buy the buildings and apparatus, etc., for the sum of $22,000 in currency, instead of $31,741.82, as required by the requests for bids made by the city. In his proposition, moreover, Steinacher tendered two houses, stating the fact to be that one of them was encumbered by a prior mortgage in favor of the municipality, which he, Steinacher, had given to guarantee a prior contract existing between himself and the municipality. In addition, his bid suggested various modifications in the administrative provisions enumerated by the city in its conditions. The bid, not being in accord with the proposition submitted by the city, was rejected. Negotiations then ensued, the result of which was that the city yielded as to the administrative provisions, and Steinacher yielded as to the price to be paid for the gas works, it being recited in the proceedings of the city on the subject that, in order to terminate the difficulties, "Mr. Steinacher expressed himself disposed to the acquisition of the said buildings, etc., as published in the Official Gazette of the 8th of June last, for the amount of thirty-one thousand seven hundred and forty-one dollars 82 cents in currency, and to take under his charge the public light at three dollars monthly for each lamp, at same currency according to the price published." The houses tendered to secure the bond were accepted by the city, and in order to give the city a first mortgage a liquidation was had between Stein-

acher and the city under the prior contract, and by this liquidation it was established that Steinacher owed the city $203 in "foreign currency," which he paid.   To ascertain whether the value of the houses was equal to the requirements of the city, they were appraised by the city officials in Porto Rican money, and this sum was reduced to foreign currency, and as the amount in foreign currency equaled the $9,000 required by the conditions of the city, the houses were accepted and a new mortgage for that amount was given.   Under these proposals and acceptance the contract was executed, conforming in all respects to the proposals and bids as modified by the proceedings which we have narrated.

The contention that the $3 per month for lighting street lamps was payable in Porto Rican money is based on the fact that sometimes in the contract the sum to be paid is referred to as in currency without any qualification.   The arguments would have cogency if the passages in the contract relied upon stood alone, but its unsoundness becomes apparent by a consideration of the context of the contract.   The estimate of the property to be sold in Porto Rican money and its liquidation in foreign currency; the terms of the bid; the proposition of Steinacher, which was accepted, to pay for the gas works at the sum of the foreign current money to which the Porto Rican money was reduced, and to do the lighting at $3 per lamp *in the same currency*, the action of the city concerning the liquidation of the prior account, and the mortgage upon the house, all demonstrate that both the proposals of the city, the acceptance by Steinacher and the contract fixed current foreign money, exclusive of Spanish gold, as the medium in which the service for lighting the street lamps was to be paid. The court, therefore, was right in its instruction as to the medium of payment required by the contract.   We find, however, nothing in the contract to support the construction that it required the payment to be made in foreign current money circulating in the island at the time the contract was made, instead of money of that character circulating at the time

the payments were to be made. The general rule, under both the common and the civil law, is that in the absence of a stipulation to the contrary, the character of money which is current at the time fixed for performance of a contract is the medium in which payments may be made. *Butler* v. *Horwitz*, 7 Wall. 258; *Willard* v. *Tayloe*, 8 Wall. 557; *Trebilcock* v. *Wilson*, 12 Wall. 687; Commercial Code of Porto Rico, Art. 312; Spanish Civil Code of Porto Rico, Arts. 1091, 1157, 1170; Code Nap. Art. 1246; Aubrey & Rau. vol. 4, p. 158; Mourlon, vol. 2, p. 749.

There was, therefore, error in instructing that the time of making the contract was to be alone considered in determining the foreign current money for which the contract provided. We think, however, such error was in no sense prejudicial. This follows, because it was conceded that if foreign current money was required by the contract, money of the United States current at the time the contract was made was within the contemplation of the parties, and that such money was also current in the island at the time when performance was due. From this it results that the rights of the parties were in no way affected by the erroneous ruling.

2d. *The effect of the agreement concerning the payment made by the city to Mullenhoff & Korber.*

On the face of the written agreement between the city and the gas company it undoubtedly appears that a stated sum of money, to be paid in United States currency, was to extinguish a larger sum in Porto Rican money.

As we have seen, there was testimony tending to show, and none tending otherwise, that the reservation in the written document concerning "claims previously filed by the said contractor," and which were to be "passed some time in the future," solely related to claims for fines which the city had assessed against the gas company and the justice of which the company disputed. The city asked the court to instruct that if it was found that at the time of the agreement it was stipulated by way of compromise that the larger sum owing

at that time should be extinguished by the payment of the lesser amount, the parties were bound. This request was refused and excepted to. The court, in its general charge, in the fullest manner instructed the jury that, as the medium of payment required by the contract was foreign current money, payment in that money extinguished simply the amount paid in foreign money, unless it was found that the minds of the parties had met on an agreement engendering an entirely new contract substituting Porto Rican money for foreign currency.

It is urged by the city that error to its prejudice resulted from refusing to give the requested instruction. To sustain this proposition the doctrine is invoked that where one receives in payment a different thing or medium from that called for in the contract, such receipt is binding. Undoubtedly the general rule obtains and is based on the premise that the discharge of a contract is a different thing from that for which the contract provides, necessarily is an accord and satisfaction as to the particular payment concerning which the different thing is received. *Sheehy* v. *Mandeville*, 6 Cranch, 253, 263; *Very* v. *Levy*, 13 How. 345, 357; *Bull* v. *Bull*, 43 Connecticut, 455; *Neal* v. *Handley*, 116 Illinois, 418; *Dimmick* v. *Sexton*, 125 Pa. St. 334.

True also it is that it has been settled by this court, *Savage* v. *United States*, 92 U. S. 382, that this doctrine is applicable to the receipt under protest in discharge of a particular payment of a different money medium from that which was required by the contract. Whilst we have not been referred to any Spanish authority showing that these principles obtained under the law in force in Porto Rico, as the doctrine rests upon principles known to the Roman law (L. 17, C. De solut), enforced under the Code Napoleon (Journal de Palais Répertoire, v. 10, verbo paiement, p. 10, No. 117; Toulier, t. 12, p. 355; Duranton, t. 12, Nos. 79 and 80), we cannot hesitate to conclude that the doctrine in question prevailed also in the Spanish civil law in force in Porto Rico. Whether it is applicable to the facts of this case is, then, the question.

Now, whilst it may be at once conceded that the doctrine in question is applicable to the payments made in Porto Rican money, before the date of the first item sued for, it is equally clear that it cannot be applied to the payments thereafter made, including those to Mullenhoff & Korber, since they were made in United States currency. The contention that these payments in such money extinguished a larger sum than the par value of the money paid reduces itself to this: that a larger sum was satisfied by the payment of a lesser sum, because there was an agreement to that effect. The gas company in effect insists that this cannot be sustained, because of the well established rule, "that where a liquidated sum is due, the payment of a less sum in satisfaction thereof, though accepted as satisfaction, is not binding as such for want of consideration." Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 364, and authorities there cited.

Conceding, without so deciding, that such rule was controlling in Porto Rico, we think it is not applicable to the case in hand. As pointed out by this court in the case just previously cited, the rule in question is subject, among others, to the well established exception that it does not apply where, at the time of the agreement, there was a dispute between the parties, the subject matter of which dispute is embraced in the agreement to extinguish a greater by a less amount. True it is, as pointed out in Fire Insurance Association v. Wickham, 141 U. S. 564, it must appear that the alleged dispute really existed and did not arise merely from an arbitrary denial by one party of an obligation which was obviously due. Despite the construction which we have given the contract, we think it is quite clear that the proof established that there was a bona fide dispute in this case. As we have seen, from the very inception of the contract the parties differed as to the medium of payment, the one—the city—insisting that it was Porto Rican money; the other—the gas company—that it was foreign current money. During a period of fully twenty years this controversy continued, and in every instance the gas

company, although protesting, accepted the city's view of the contract, and by taking a different medium bound itself as to those payments despite its protest. When the period arrived when the company was no longer willing to so act and stood upon its rights as it understood them, naturally the city stood upon its asserted rights, and thus the parties were at arm's length disputing their respective rights. If there had been no agreement, the solution would have required judicial action. When in view of this dispute an agreement was reached that the payment should be made in United States currency, and that the payment should extinguish a larger amount estimated in Porto Rican currency, there was necessarily a compromise and settlement as to that payment which put the transaction so settled exactly in the position which had resulted from the action of the parties concerning the payments made during the preceding period of more than twenty years.

It follows from the foregoing that the court below erred to the prejudice of the city in refusing the instruction asked by it as to the result of the compromise, and that this error was not cured by the general charge, which instructed the jury that the compromise evidenced by the agreement must be treated as inefficacious as to the particular items to which it related, unless it was found that the minds of the parties had met on an entirely new and independent contract.

The judgment of the court below is reversed, and the cause is remanded with directions to set aside the judgment, and grant a new trial

*Reversed.*