**TRACTOR & EQUIPMENT CORPORATION v. CHAIN BELT CO.**

District Court, S. D. New York.

Sept. 5, 1942.

1002

See, also, 2 F.R.D. 206.

Edmund Glueck, of New York City, for plaintiff.

Harper & Matthews, of New York City (Vincent P. Uihlein and James E. Austin, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is a motion by plaintiff, Tractor & Equipment Corporation, for a partial summary judgment pursuant to Rule 56 of the F.R.C.P., 28 U.S.C.A. following section 723c. The defendant, Chain Belt Company, has made a similar motion. Both motions will be decided together as they involve the same facts and the first cause of action only.

Plaintiff's motion (which was the first to be made) prays for an order: " * * * granting judgment in favor of plaintiff and against defendant for the sum of $6,520.09, with interest thereon from December 30, 1940, admitted by the answer to the complaint, and also by said answers to said interrogatories, to be due plaintiff, and di-recting that the action herein be severed, and that it be continued as to the remainder of the claim set up in the complaint with like effect as to all subsequent proceedings as if it had been originally brought for the remainder of the claim, * * *".

On a cross-motion defendant seeks an order:

"(1) directing the entry of a judgment dismissing so much of plaintiff's first cause of action as exceeds $6,520.09, pursuant to F.R.C.P. 56, upon the ground that the receipt by plaintiff of defendant's check for $6,520.09 and the defendant's accompanying letter submitting said check in full satisfaction, together with plaintiff's retention thereof for an unreasonable length of time, to wit, more than four months, constitutes a settlement of plaintiff's first claim in the sum of $6,520.09;

"(2) directing that the action herein be severed and continued as to such $6,520.09 upon the first cause of action and as to the second cause of action; * * *".

The Facts

On or about December 29, 1939, and as of December 15, 1939, the defendant appointed the plaintiff its exclusive sales representative for the sale of certain machinery and equipment manufactured by the defendant, to contractors engaged in construction work upon projects connected with the Delaware River Aqueduct. (The plaintiff claims to have been appointed exclusive sales representative of the defendant as to accessories and parts as well, but this is denied by defendant's answer.) Plaintiff thereafter sold to certain contractors on the Aqueduct Project machinery, equipment, accessories and parts. Defendant admits this. Plaintiff claims he became entitled to commissions of not less than $37,000.

On January 8, 1941, the defendant wrote plaintiff and enclosed a check in the sum of $6,520.09 and two statements, one of plaintiff's commission account ($6,429.45) and the other plaintiff's commercial account ($90.64). The concluding paragraph of defendant's letter stated: "According to our records, this payment closes in full all your commissions either accrued or earned as of the end of the year 1940 and as there are no other transactions of which we have knowledge, this payment is considered by us as payment in full of all of our indebtedness to you."

The check was dated December 30, 1940, and was drawn on defendant's account in the National City Bank of New York to the order of plaintiff. The voucher attached to the check, and detachable at a perforated line, contained the printed statement: "Please detach check before depositing. The attached check is in full settlement of account below. If found correct no acknowledgment is necessary. If not correct please return without alteration and state differences". Below that was typed—

"12-30—Commission Account          6429.45
Regular Account          90.64—$6520.09"

The letter and check were accompanied by a statement of plaintiff's commission account, as calculated by the defendant, on which the defendant's check was based. Beginning with a balance forward as of July 1939 the account, using code references, listed various charges and credits in the succeeding months through October 1940.

On January 15, 1941, the attorneys for Mr. Milton Brodsky, a stockholder in the plaintiff corporation, who was then bringing a derivative action against the defendant, wrote the defendant's attorneys a letter, asking that the plaintiff be permitted to deposit the check without prejudice. This letter was not answered until January 27th when defendant replied as follows: that the check could be deposited without prejudice to the pending derivative action but that no waiver would be made of the condition that its acceptance was to be in full settlement of all other claims. Defendant's letter stated:

"It was not the intention of Chain Belt Company that the deposit of the above mentioned check by Tractor & Equipment Corp. would constitute settlement and satisfaction of any of the alleged claims set forth in the complaint verified by your client, Milton Brodsky, on July 3, 1930, and heretofore served upon Chain Belt Company in the action brought by Mr. Brodsky in the Supreme Court, Bronx County, against Tractor & Equipment Corp., Chain Belt Company et al. However, it was and is intended by Chain Belt Company that acceptance of the check shall constitute settlement, satisfaction and full discharge of all claims and demands of any nature whatsoever of Tractor & Equipment Corp. against Chain Belt Company, except only the matters set forth in the above mentioned complaint.

"If the foregoing condition of acceptance of the check is satisfactory to Mr. Brodsky and to Tractor & Equipment Corp. may we ask that the check be promptly deposited. If, however, he or the corporation is unwilling that the check be accepted upon the above conditions, then will you not have Tractor & Equipment Corp. immediately return to us the check of Chain Belt Company."

Copies of this letter were sent about the same time to the present plaintiff and to its attorney, who represents the plaintiff in the present action.

Defendant's letter was answered by Mr. Brodsky's attorneys on January 28, 1941, with the declaration: "As far as our client is concerned, we cannot accept the conditions you set forth and will protest against any deposit of the check if such deposit connotes such acceptance."

About April 19, 1941, plaintiff's attorney conferred with Mr. Brodsky's attorney and came actively into the controversy. Plaintiff's attorney conferred with Mr. Uihlein, of the law firm representing the defendant, in April 1941, in an attempt to have the condition waived, and the matter was left in the negotiation stage. On May 17, 1941, Mr. Tyrrel, the Milwaukee general counsel of the defendant, called on the attorneys for the plaintiff and there were further negotiations in reference to a waiver of the condition attached to the deposit of the check. Mr. Tyrrel promised again to consider the matter. Plaintiff's attorney said he intended to sue on other claims, in addition to the amount represented by the check, and Mr. Tyrrel stated that he would await the institution of the action before considering the request. Six days later, May 23, 1941, the check was returned to the attorneys for the defendant with a letter which stated that, "the conditions which you impose upon the use of funds which belong to us (representing, as they do moneys concededly earned) leave my client no alternative but to return the check, and the same is herewith enclosed."

Receipt of the returned check was acknowledged by defendant's attorneys on May 27, 1941, in a letter which reviewed certain previous steps in the matter, claimed that the condition of an accord and satisfaction had been insisted upon in defendant's letter of January 27, 1941, as-

serted the defendant's belief that "this retention of the check for an unreasonable length of time before returning constitutes an acceptance of the condition attached to its delivery" as modified by the letter of January 27th, and "an accord and satisfaction". The letter concluded by saying: "The check will be held by us at your disposal". Concededly, there was due the plaintiff not less than the amount of the check, and the check was never deposited, cashed, transferred or endorsed, although it was retained for more than four months (under the circumstances hereinabove referred to) before being returned.

The defendant moves for partial summary judgment on the basis of an alleged acceptance of a condition which accompanied the delivery of the check and insists that the plaintiff should be limited to an amount equal to the check in satisfaction of the plaintiff's entire claim for relief ($37,000), in the first cause of action. The defendant has also pressed the defense of account stated, on the basis of an alleged failure of the plaintiff promptly to object to the defendant's statement of account as found in the correspondence. The plaintiff replies that the retention of the check, when explained, does not show an acceptance of the condition, and that the defendant has not pleaded an account stated as a defense.

■ Defendant's brief urges the alleged account stated as an additional basis for defendant's motion for summary judgment. The account stated had its origin in much the same factual situation as the alleged unreasonable retention of the check. But the basis for the account stated defense is much weaker. On January 15, 1942, protest was made in the letter of Mr. Brodsky's attorney against "the correctness" and "completeness of the account". Mr. Brodsky was the minority stockholder who some months before had instituted a suit against both plaintiff and defendant and others charging a conspiracy to divert business away from plaintiff corporation. Having this in mind, the trial court may wish to inquire into the conduct of both plaintiff and defendant in December 1940 and January 1941 in the termination of the contract between plaintiff and defendant, the mailing of the check and the alleged account stated. There is a genuine issue of fact as to whether or not there was an account stated. It therefore cannot be advanced as a reason for granting defendant's motion for summary judgment. (Rule 56, F.R.C.P.)

■ The other ground of defendant's motion is that the check was held by the plaintiff for more than four months after January 8, 1941, before it was returned, and that this retention was in conflict with the defendant's instructions for prompt return in the event of rejection, contained in defendant's letter of January 27, 1941. The plaintiff was for a good part of the time negotiating with the defendant for a removal of the conditions surrounding the tender of the check. Whether this retention was for such an unreasonable period that it should be considered an acceptance of the check and of the conditions attached to the defendant's tender of the same, or whether the retention of the check was for a reasonable time, under all the circumstances, is not a matter that should be decided on affidavits alone. There should be a searching examination of all the facts involved. This can better be done at the trial by those who will hear and observe the witnesses on direct and cross examination. If it should be determined that the defendant retained the check for an unreasonable time in the light of all the circumstances, and if all of plaintiff's claim is based upon the breach of a single promise in the agency contract, then the plaintiff may be deemed to have accepted the check and the conditions surrounding its tender, just as though it had been deposited or cashed. Williston on Contracts, § 1854 and cases cited in the footnotes.

Apparently it will be defendant's contention (as its answer indicates) that although plaintiff sold accessories and parts for defendant, he is not entitled to anything for that service on the ground that the terms covering plaintiff's engagement for 1940, did not specify any "accessories and parts" and were limited to certain types of "machinery and equipment."

To understand the relationship between plaintiff and defendant, we must go beyond the letter of December 29, 1939. That letter itself referred to an earlier contract which gave plaintiff exclusive selling rights on certain Rex products. The letter advised plaintiff that defendant would not renew the agreement, with one exception, referred to in the letter. But the earlier contract of 1937, had a number of supplements, some of which related to the machinery and equipment covered by the exception in the letter of December 29, 1939.

The letter of December 29, 1939 and the 1937 contract and the supplements thereto are found in defendant's interrogatories and plaintiff's answers thereto. The manner in which the parties by their acts interpreted those earlier contracts, and the trade meaning of some of the terms thereof, may be the subject of testimony at the trial. It should there develop also how many "promises" were made by defendant to pay to plaintiff various commissions on the sale of different types of defendant's products.

The check tendered and the account rendered were all based on defendant's interpretation of the contract that it made a single promise to pay commissions on the sale of certain specified types of machinery and equipment only. The rate of commission varied on different types of machinery and equipment, but there does not appear to be any dispute as to the rate. The account rendered, as far as it went, was correct. According to plaintiff, it failed to list commissions to which plaintiff was entitled on all the sales. What was the whole contract of the parties? How many "promises" did it contain? In addition to the promise to pay commissions on certain types of machinery and equipment, did the contract also contain promises to pay commissions on accessories and parts and on other types of machinery? It may be that there were several promises to pay commissions. There were different types of machinery and equipment, and accessories and parts, covered by the one contract and its several supplements.

■ If the trial judge, after hearing the testimony, decides that plaintiff's claim is based upon several contracts or upon separate promises in the contract, then even actual payment of the amount concededly due on certain of the promises would not be a good consideration for the release of damages upon breach of others. The applicable principles of law are clearly stated by Judge Learned Hand in Matlack Coal & Iron Corp. v. New York Quebracho Extract Co., 2 Cir., 30 F.2d 275, at pages 276, 277, from which the following is quoted: "If the libelant's claim had been made up of several items arising upon the breach of a single promise, of which the respondent recognized some and repudiated others, a payment of those conceded would have been good consideration for the discharge of the whole claim on that breach. Baird v. United States, 96 U.S. 430, 24 L.Ed. 703; Chicago, M. & St. P. R. Co. v. Clark, 178 U.S. 353, 20 S.Ct. 924, 44 L.Ed. 1099; City of San Juan v. [St. John's Gas Co.], 195 U.S. 510, 25 S.Ct. 108, 49 L.Ed. 299, 1 Ann.Cas. 796; Nassoiy v. Tomlinson, 148 N.Y. 326, 42 N.E. 715, 51 Am.St.Rep. 695. But, when there are two claims arising upon separate promises, though in the same contract, payment of the amount concededly due upon one will not be a good consideration for the release of damages upon breach of the other. Fire Insurance Ass'n v. Wickham, 141 U.S. 564, 577, 12 S.Ct. 84, 35 L.Ed. 860; Williston on Contracts, § 129. The situation is plain when two claims arise under separate contracts, since it cannot be regarded as a detriment to pay what is concededly due under a promise which can be separately enforced. Keene v. Gauen, 5 Cir., 22 F.2d 723. The contrary is also plain, when the payment is a part of what is due, though concededly due, under a single promise, since the promisor cannot be said to be under a separate obligation to pay the conceded part. Now it is true that ordinarily one must sue upon all existing breaches of a contract, and the reasoning of the second illustration has at times been extended to such a case. Yet the requirement of including all breaches in a single suit is only to prevent unreasonable litigation, and the promisor is under a separate obligation in respect of each promise. To pay the sum concededly due under one is not, therefore, to incur a detriment not already imposed upon him. We accept the analysis of Professor Williston, loc. cit."

■■ If the tendered check was for undisputed amounts covered by certain "promises" of the contract and plaintiff's claims include other amounts covered by other promises of the contract, the retention of the check, even for an unreasonable time, would not constitute an accord and satisfaction of anything except the items included in the account rendered which accompanied the tender of the check. In the determination of that question issues of fact are presented. Under those circumstances, defendant's motion for partial summary judgment must be denied. Cases cited by the parties involving transactions where there was only a single promise of payment in the contract, have been considered by the Court, but need not be discussed in view of the reasons for the decision of these motions as stated in this opinion.

The law and the undisputed facts applicable to plaintiff's motion for partial summary judgment, in my opinion require its favorable consideration.

▋ Under the New York practice (Sec. 476 of the Civil Practice Act and Rule 114 of the Rules of Civil Practice) entry of partial summary judgment is permitted—

" * * * where there is an unqualified admission that there is due to the plaintiff a precise sum, less than the amount sued for, upon the same transaction forming the basis of the plaintiff's claim, although the admission of liability is predicated upon a cause of action different from that alleged in the complaint, or upon different terms concerning the same type of action. Parthenia Corp. v. Morse, D.C., 41 F.2d 961. Under such circumstances there is no reason why the 'debtor (should) be absolved from the present payment of what he admits to be due because the creditor, acting within his legal rights, asserts that he owes more.' Appelbaum v. Gross, 117 Misc. 140, 149, 191 N.Y.S. 710, 715, affirmed Apfelbaum v. Gross, 200 App.Div. 914, 192 N.Y.S. 913.

"The creditor, in a situation such as is here presented, should have immediate judgment for the amount concededly due him and the action severed and otherwise tried in accordance with the issues raised by the pleadings. The defendant is in no way prejudiced, for he will have a full trial on the issues which are in dispute, namely, on the terms of the contract entered into between the parties." Shientag, J., in Sheehan v. Andrew Cone General Advertising Agency, Inc., App.Term, 1st Dept., 176 Misc. 882, 29 N.Y.S.2d 317, 319.

And such has been the decision in this Southern District in comparable situations under Admiralty Rule 29, 28 U.S.C.A. following section 723, Parthenia Corp. v. Morse, supra, and under Rule 56(a), F.R.C.P. Bamberger Broadcasting Service, Inc., v. William Irving Hamilton, Inc., D.C., 33 F.Supp. 273.

The case of Appelbaum v. Gross, supra, is very similar to the case at bar.

The defendant maintains that the amount of the check was not conceded as an absolute debt but merely a part of an offer of settlement, not to be considered if divorced from the offer. This appears to be at variance with the defendant's own statement of account which accompanied the letter of January 8, 1941.

▋ Defendant's letter of January 8, 1941, accompanying the tendered check, admitted that $6,520.09 was due the plaintiff as commissions. A statement showed how that amount of commissions was calculated. Regardless of whether or not the trial will show that defendant promised to pay commissions on other sales also or that the retention of the check was for an unreasonable length of time, it seems to me that plaintiff is entitled now to a judgment for the amount of the commissions admittedly due. These are commissions on specific sales. There are no offsets or counterclaims pleaded.

▋ The defendant has, for the first time, raised the defense of account stated in the papers submitted in its behalf on these motions. The Federal Rules of Civil Procedure require affirmative defenses to be set forth in the pleadings, and therefore there is a question as to whether that defense is now open to the defendant. Rule 8(c) of the F.R.C.P. Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778. However, that defense, at its best, would not apply to the $6,520.09, but only to the difference between that amount and plaintiff's total commission claim of $37,000.

Defendant opposes paying what it admittedly owes, until this lawsuit can be reached for trial, when plaintiff will surely be awarded judgment at least for that amount. There has been no tender of the sum into court. In the interest of justice, plaintiff is entitled to be paid that sum now, plus interest from December 30, 1940. Bamberger Broadcasting Service v. William Irving Hamilton, Inc., supra.

Plaintiff's motion for partial summary judgment against the defendant for the sum of $6,520.09, with interest thereon from December 30, 1940, is granted. The first cause of action, to which this motion was directed, is severed and is to be continued against defendant as to the balance of the plaintiff's claim. Defendant's motion for partial summary judgment is denied.

Submit order providing for judgment in accordance with this opinion.