ENRIQUE LÓPEZ DELGADO, Plaintiff and Appellee, *v.* SOUTH PORTO RICO SUGAR COMPANY OF PUERTO RICO, Defendant and Appellant.

No. 8645. Argued May 21, 1943.—Decided June 14, 1943.

228

F. *Manuel Toro* and R. *Castro Fernández* for appellant. J. *Alemañy Sosa* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Towards the end of 1937 the plaintiff and the defendant entered into a verbal contract for the grinding of sugar cane pursuant to which the defendant agreed to grind the cane of the plaintiff of superior grades, from the farms of the former in the Municipality of Cabo Rojo, under the regular grinding terms, payment of the share of the plaintiff to be made within the first 15 days of the month following the delivery of the cane. On the date on which the contract was entered into, Act No. 112, approved May 13, 1937 (Laws of 1937, p. 261) was already in force. The pertinent portion of §11, and §15 as a whole, read as follows:

"Section 11.—The liquidation of the sugar belonging to a *colono* shall be made by the central fortnightly or monthly, as it may have been agreed upon, taking as the value of the sugar, for its liquidation, the fortnightly or monthly average price in the New York market,

of the sales of sugar of 96° of polarization, for the fortnight or month in which the cane was delivered, from which average price a sum which shall not exceed fifteen (15) cents for each hundredweight shall be deducted to cover the expenses of bagging and freight; . . . ''

"Section 15.—Every contract entered into, or every practice introduced, in contravention of the provisions of this Act, shall be null and inexistent.''

Pursuant to said contract, the cane grower delivered his cane to the sugar mill. The latter ground the cane from January to May of 1938 and by virtue of the readjustment made in December 1939, to which we shall hereinafter refer, adjusted the contract to the provisions of the said Act No. 112, with the exception of the discount for bagging and freight provided in §11, *supra,* under which the mill discounted 25 cents from the cane grower instead of a sum not exceeding 15 cents for each quintal of sugar.

Shortly after said Act No. 112 came into effect, its constitutionality was assailed by another person. Pending definite determination of the validity of the law, the mill continued in a provisional way to make the said discount of 25 cents, in violation of the cited legal provision. While the matter was in this state, and before the constitutional question which was pending in the courts had been definitely decided, Act No. 213 (Laws of 1938, p. 411) was approved on May 15, 1938. By virtue of that Act various sections of Act No. 213 were amended, among them §11. Pursuant to said amendment the centrals were authorized to ''deduct an amount which shall not exceed twenty-five (25) cents for each hundredweight, free from all imposts, to cover the expenses of bagging, freight, maritime insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the New York market; . . . ''

Meanwhile the judgment of the District Court of the United States for Puerto Rico, declaring Act No. 112 constitutional, was affirmed by the Circuit Court of Appeals for

the First Circuit on June 13, 1939 (*Vidal v. Fernández,* 104 F. (2d) 606), and subsequently, on November 6, 1939, the Supreme Court of the United States denied a petition for certiorari (*Vidal, Receiver, v. García, Attorney General of P. R., et al.,* 308 U.S. 602). In that way the constitutionality of said Act No. 112 became definitely established.

On December 12, 1939, after the constitutionality of Act No. 112 had been definitely established, the mill readjusted the liquidation in the manner quoted above, continuing to discount 25 cents instead of 15 cents for each quintal of sugar. It based its alleged right to discount 25 cents on the point that §11 had been amended by Act No. 213 of 1938 in the above-described manner before the constitutionality of the law had been definitely established. In the opinion of the mill, as Act No. 213 of 1938 contained no saving clause with reference to the rights acquired under §11 of Act No. 112, the amendment to the said Section, authorizing the central to discount 25 cents for each quintal of sugar, had retroactive effect and ought to be considered as though it had always been the law. So that on making the said readjustment on December 12, 1939, the mill sent to the grower a check for $281.60, which did not include, of course, the difference between the 15 cents and 25 cents discount mentioned above.

It should be noted that on the back of the said check for $281.60, in conformity with what had been done on previous checks, the central provided the following: "Endorsement hereof by the payee is acknowledgment of full payment and satisfaction of the statement which was attached to the voucher and bears this same date and serial number."

On December 22, 1939, the grower endorsed and cashed the said check for $281.60; but he claimed from the mill 10 cents for each quintal of sugar, amounting to $789.15, a sum which he contended had been improperly retained by the mill. The latter having refused to pay this sum, the grower filed this suit, claiming the said sum, with legal interest from

the 15th day of the month following the delivery of the cane, until complete payment thereof, plus costs and attorney's fees.

In its answer the mill set up several defenses which in effect were that the complaint did not state facts sufficient to constitute a cause of action, that the amendment of §11 of Act No. 112 by Act No. 213 was retroactive to the dates of the deliveries of the cane, and that the collection of the check for $281.60 with the above-noted endorsement had the legal effect of accord and satisfaction and therefore put an end to any claim by the plaintiff.

The district court entered judgment for the grower for the $789.15 claimed in the complaint, plus costs and $200 attorney's fees. The mill has appealed from that judgment.

■ The contention of the appellant that the amendment of §11 was retroactive to the effective date of the original Act, that is, Act No. 112, is clearly without merit. Act No. 112 as a whole is a law of substantive character and therefore any amendment thereto has prospective effect unless something therein expressly indicates the contrary, and does not prejudice rights acquired under previous legislation. Section 3 of the Civil Code provides to that effect as follows:

"Section 3.—Laws shall not have a retroactive effect unless they expressly so decree.

"In no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action."

The authorities which the appellant invokes refer to procedural statutes which, as we held in *Mason* v. *White Star Bus Line, Inc.*, 53 P.R.R. 320, 323, have retroactive effect and apply both to pending and to future cases, unless the act itself expressly or implicitly shows that this was not the intent of the legislature.

The demurrer herein, which sets up the contentions that the complaint has failed to state a cause of action and that

the district court lacked jurisdiction, is based on the theory that the amendment in question was retroactive and that the plaintiff therefore has no claim herein. What we have said decides these contentions against the defendant-appellant.

■ We proceed to consider the defense of accord and satisfaction.

No legislation exists in this jurisdiction which provides expressly for the doctrine of accord and satisfaction, which has existed in the common law since time inmemorial. See the articles of James Barr Ames in 9 Harv. L. Rev. 49, and 12 Harv. L. Rev. 515, entitled ''Specialty Contracts and Equitable Defences;'' and ''Two Theories of Consideration,'' respectively.

This court, in the case of *Abarca* v. *Bank of Nova Scotia*, 46 P.R.R. 898, 909–10, expressed some doubt about the existence of this doctrine in Puerto Rico, in rejecting the contention of the appellant, who contended that the said doctrine is established by §1063 of the Civil Code, saying:

''The doctrine of 'accord and satisfaction,' assuming it to be in force in Puerto Rico, is not applicable to the facts developed in the present case. ... We are not adverse—on the contrary, we are rather inclined—to adopt those wholesome and just doctrines derived from the common law which are not in conflict with our civil law or the statutes enacted by our Legislature. But we would not be acting wisely in these efforts to enrich and adjust our jurisprudence were we to proceed without first paving the ground through study and investigation.''

However, we think we are now able to dissipate that doubt and to hold that the doctrine of accord and satisfaction prevails in this jurisdiction. It was so held by the Supreme Court of the United States, in an opinion by the then Mr. Justice White, when he said in *City of San Juan* v. *St. John's Gas Co.*, (1904) 195 U.S. 510, 521:

'' . . . . Whilst we have not been referred to any Spanish authority showing that these principles obtained under the law in force in Porto Rico, as the doctrine rests upon principles known to the Roman

law (L. 17, C. De solut), enforced under the Code Napoleon (Journal de Palais Répertoire v. 10, verbo paiement, p. 10, No. 117; Toulier, t. 12, p. 355; Duranton, t. 12, Nos. 79 and 80), we cannot hesitate to conclude that the doctrine in question prevailed also in the Spanish civil law in force in Porto Rico. Whether it is applicable to the facts of this case is, then, the question.''

We have been unable to find anything on this question in the Spanish laws or in the works of the commentators. But in Louisiana, where a Civil Code very similar to ours, exists and where no specific provision on this question is found, it has been held that the said principle is not established by §3071 of the Civil Code, equivalent to §1709 of our Code, which defines the contract of compromise; but that State, in a laudable effort to enrich its system of law by absorbing those wise and just principles of the common law compatible with its system of jurisprudence emanating from Roman Law, for many years has been constantly applying the doctrine of accord and satisfaction. *Davis-Wood Lumber Co.* v. *Farnsworth & Co.* (1937), 171 So. 622; *Berger* v. *Quintero* (La., 1930), 127 So. 356, 357; *Cruze* v. *Life Insurance Company of Virginia* (La., 1938), 184 So. 735.

For accord and satisfaction to apply, the following requisites must exist: (1) A claim which is unliquidated or concerning which a *bona fide* controversy exists; (2) an offer of payment by the debtor; and (3) an acceptance of the offer of payment by the creditor. *Cruze* v. *Life Insurance Company of Virginia, supra,* and cases therein cited; *Berger* v. *Quintero, supra.* Inasmuch as a *sine qua non* requisite, in order that the doctrine of accord and satisfaction be applicable, is that the claim be unliquidated or that it involve a *bona fide* controversy, it seems obvious that when the creditor in the indicated circumstances receives from the debtor and accepts a sum less than that he claims, the creditor by virtue thereof is estopped from claiming the difference between that received and that originally claimed. The creditor, on making the offer of payment subject to the condition

that acceptance thereof will be understood as complete payment of his claim, has the duty of returning to the debtor the sum offered, if he is not agreeable to the said condition. But he cannot take advantage of the offer of payment made in good faith by the debtor, in order, after receiving the same, to claim the balance. If he had not accepted the offer of payment, the creditor would have had to litigate his claim in the courts, with the risk perhaps of not being able to establish as due the amount that the debtor himself was willing to pay. In addition, by his conduct he would deprive the debtor, in case of litigation, of the right he had to take advantage of the provisions of §313 of the Code of Civil Procedure.

Having determined that the doctrine in question applies in Puerto Rico, we have before us only the question of determining if the same is applicable to the present case. It cannot be questioned that there was an offer of payment by the debtor-defendant and an acceptance of the same by the creditor-plaintiff. But did the first of the three indispensable elements for the application of the doctrine exist in this case? It undoubtedly did not. It will be noted that no dispute exists as to the exact amount of the claim of the plaintiff. The dispute is solely as to the obligation of the defendant to pay the same, in view of his contention that the law which gave rise to the claim was unconstitutional. But on December 12, 1939, when defendant-appellant made the offer of payment and sent the check in question to the plaintiff-appellee, the Supreme Court of the United States, in denying the petition for certiorari on November 6, 1939, had already dissipated the doubt that the defendant had as to his obligation to pay the sum claimed by the plaintiff. It is therefore obvious that, independently of §15 of Act No. 112 which declared null and nonexistent any contract or practice contrary to the provisions of the statute, the acceptance and cashing of the check by the plaintiff does not deprive him of the right to claim the balance owing to him, since no *causa* or considera-

tion existed on which to base the acceptance of a smaller sum in payment of a larger obligation.

 Finally, we are unable to agree with the appellant when he alleges that the lower court erred in imposing costs and $200 attorney's fees. The district court having entered judgment in favor of the plaintiff, the law imposed on it the duty of awarding him costs, and as to the attorney's fees, we are not satisfied that the lower court abused its discretion in awarding them and in fixing them in the amount of $200.

For the above-stated reasons, the judgment of the district court will be affirmed.